# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**October 2, 1996**

**Cecil W. Crowson**
**Appellate Court Clerk**

**RONNIE WILSON PERRY,**          )
                                  )
    Plaintiff/Appellee,          )          Wilson Equity No. 8435
                                  )
**vs.**                           )
                                  )
**MARLA RENEE PERRY (ROBINSON)**  )          Appeal No. 01A01-9602-CH-00088
                                  )
    Defendant/Appellant.         )


APPEAL FROM THE CHANCERY COURT OF WILSON COUNTY
AT LEBANON, TENNESSEE


THE HONORABLE C.  K. SMITH, CHANCELLOR


For the Plaintiff/Appellee:          For the Defendant/Appellant:

Jessica Dawn Dugger                  Jon S. Jablonski
Gregory S. Gill                      Nashville, Tennessee
Lebanon, Tennessee


**AFFIRMED IN PART, REVERSED
IN PART, AND REMANDED**


HOLLY KIRBY LILLARD, J.


CONCUR:


W. FRANK CRAWFORD, P.J., W.S.


WILLIAM C. KOCH, JR., J.

OPINION

This is a child custody case. Appellant Marla Perry sought to move out of state with the minor children of her previous marriage. In response, Appellee Ronnie Perry filed a petition seeking a change in custody. The trial court held that custody would be changed in the event that the mother moved out state. We reverse, based on the Tennessee Supreme Court's decision in *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996).

In 1992, Appellant Marla Perry (Mother) and Appellee Ronnie Perry (Father) were divorced. The parties have three minor children. The divorce decree gave the parties joint custody of the children, with Mother having primary physical custody and Father having liberal visitation privileges. The Marital Dissolution Agreement, incorporated into the divorce decree, specifically provided for the possibility of Mother moving elsewhere with the children. In the event that Mother moved from Tennessee, Father was to get additional visitation.

In 1995, Mother decided that she wanted to move to Tulsa, Oklahoma, and notified Father to that effect. Father filed for a change in custody. The trial court found that Mother had done an excellent job raising the children and that "it would be devastating to the children" if custody were changed to Father. On the other hand, there was no justification for Mother's planned move to Oklahoma, the children did not want to move, and "[i]t would be crushing to the children if they moved to Oklahoma." The court stated that the primary consideration was the best interest of the children and that the court's authority could not be abrogated by the Marital Dissolution Agreement. Furthermore, the court concluded that "the stability of the children dictates that they stay in school where they are, stay in the environment they are accustomed, stay in their community and close to their relatives." Consequently, the trial court ordered that custody of the minor children remain with Mother unless she decided to leave the state, in which case custody would be changed to Father. Mother now appeals this decision.

Resolution of this appeal is controlled by the Tennessee Supreme Court's decision in *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996). In *Aaby*, the parties were divorced by a judgment which incorporated a marital dissolution agreement giving custody of the minor child to the mother. The judgment provided for visitation for the father and contained no prohibition against the mother moving out of Tennessee with the child. When the mother requested permission of the court to move to Kentucky, the father petitioned to have custody changed to him if the mother moved, claiming that a move to Kentucky would not be in the child's best

interest. *Id.* at 624. The trial court ultimately ruled that the mother had not shown that the move would be in the child's best interest and that custody would be changed to the father if the mother did move. *Id.* at 624-25. The appellate court affirmed, and the mother then appealed to the Tennessee Supreme Court. *Id.* at 625.

The Tennessee Supreme Court granted the application for permission to appeal in order to clarify the law of removal. *Id.* The Court reviewed the law of removal in Tennessee, especially *Taylor v. Taylor*, 849 S.W.2d 319 (Tenn. 1993), its earlier effort to provide guidance on removal issues. *Aaby*, 924 S.W.2d at 625-28. The Court reaffirmed that the two predominate goals in the law of removal are to limit judicial intervention in family decisions after divorce and to make it easier to resolve legal disputes which must be litigated. *Aaby*, 924 S.W.2d at 629. The Court noted that the traditional test, determining the best interests of the child, made achieving these goals difficult. In addition, the Court recognized that the interests of the child and of the custodial parent, while not always identical, are "basically interrelated." *Id.* In light of this background, the Court held as follows:

> Therefore, we conclude, as the mother insists, that a custodial parent will be allowed to remove the child from the jurisdiction unless the non-custodial parent can show, by a preponderance of the evidence, that the custodial parent's motives for moving are vindictive--that is, intended to defeat or deter the visitation rights of the non-custodial parent.
>
> This conclusion does not mean, however, that a non-custodial parent's hands are tied where removal could pose a specific, serious threat of harm to the child. In these situations, the non-custodial parent may file a petition for change of custody based on a material change of circumstances. The petition would state, in effect, that the proposed move evidences such bad judgment and is so potentially harmful to the child that custody should be changed to the petitioner.

*Id.* (footnote omitted). The Court then explained what was needed to establish a specific, serious threat of harm:

> However, expert psychological and/or psychiatric testimony that removal could be generally detrimental to the child will usually not suffice to establish an injury that is specific and serious enough to justify a change of custody. A move in any child's life, whether he or she is raised in the context of a one or two parent home, carries with it the potential of disruption; such common phenomena--both the fact of moving and the accompanying distress--cannot constitute a basis for the drastic measure of a change of custody.

*Id.* at 630. The Court noted some examples of the type of threat of harm which could warrant a change of custody, such as a desire to take a child with a serious medical condition to an area where adequate treatment was not available. *Id.* at 629 n.2.

2

The *Aaby* Court found that the mother's motive for moving was not vindictive and that the evidence did not demonstrate a harm that was specific and serious enough to warrant changing custody to the father. The Court therefore reversed the appellate court. *Id.* at 630.

Father attempts to distinguish *Aaby* by arguing that the custodial parent in that case had *sole* custody, while the parties in this case have joint custody, with Mother having primary physical custody. This is a distinction without a difference. The resolution of this case is clearly controlled by *Aaby*.

There is no evidence in the record that Mother's move is vindictive. Further, the record does not demonstrate any harm to the children beyond the general emotional and social harms all children face when their family moves from one area to another. Therefore, Mother may move to Oklahoma without surrendering physical custody of the children. The cause is remanded to the trial court for any further proceedings required, such as modification of the visitation schedule, if necessary.

The trial court's decision denying the petition for change of custody is affirmed. The order providing that custody would be changed to Appellee if Appellant chooses to relocate is reversed. The case is remanded to the trial court for any further proceedings required, consistent with this Opinion. Costs on appeal are taxed to Appellee, for which execution may issue if necessary.

_____

_____ **HOLLY KIRBY LILLARD, J.**

**CONCUR:**

_____
**W. FRANK CRAWFORD, P. J., W.S.**

_____
**WILLIAM C. KOCH, JR., J.**