IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
October 11, 2000 Session

## TAMMY SEARLE v. KEITH PFISTER

**Appeal from the Juvenile Court for Williamson County**
**No. 21110     Lonnie R. Hoover, Judge**

---

**No. M2000-00731-COA-R3-CV - Filed December 21, 2000**

---

The unmarried parents of a young child separated, and the mother subsequently filed a petition to modify the father's visitation so she could move to California with her new boyfriend. The trial court initially denied her petition, but reversed itself after the mother and the boyfriend married. On appeal, the father argues that the trial court erred because it failed to recognize the mother's vindictive motive. We affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, JJ., joined.

R. E. Lee Davies and P. Edward Schell, Franklin, Tennessee, for the appellant, Keith Pfister.

Sandra Jones, Nashville, Tennessee, for the appellee, Tammy Searle.

**OPINION**

**I.**
**PROCEEDINGS IN THE JUVENILE COURT**

Alexis Nicole Searle was born on August 3, 1996 to Tammy Searle and Keith Pfister. The parents lived together for a total of two and a half years, but never married. Mr. Pfister filed a voluntary acknowledgment of paternity shortly after his daughter was born, and an order of legitimation was issued two days later.

About nine months after the birth of Alexis, the parties separated. Ms. Searle retained custody of her daughter, and Mr. Pfister began paying child support of about $500 per month. Ms. Searle subsequently began a relationship with Dino Moretti. The next few years were marked by an ongoing and increasingly bitter struggle between Ms. Searle and Mr. Pfister involving custody and visitation, the details of which we need not get into at this point.

The current dispute had its beginnings on January 27, 1999, when, pursuant to Tenn. Code. Ann. § 36-6-108, Ms. Searle served Mr. Pfister with a Notice of Relocation, and filed a petition in the Juvenile Court of Williamson County to modify visitation. Mr. Moretti was working for a company called City Search, which offered him a promotion as director of photography at its California headquarters, and he wanted Ms. Searle and Alexis to join him there. Mr. Pfister filed a response to the petition, in which he requested that he be granted custody of Alexis.

The Juvenile Court conducted a hearing on April 13, 1999. Ms. Searle and Mr. Moretti testified that they were engaged to be married, and that they planned to marry in California, where Mr. Moretti had previously lived, and where he had many friends. Though the judge declared himself persuaded of Mr. Moretti's sincerity, he expressed reservations about the lack of a legal marital relationship between Mr. Moretti and Ms. Searle as follows:

> "[T]hey have been boyfriend/girlfriend for the last year, year and a half, and they're still boyfriend/girlfriend. Now, to upset the apple cart with a three year old child, and have her pull up roots and move to California with the mother, essentially chasing the boyfriend without any other legal obligation, I think is wrong. And I just don't think there is a legal purpose for that. I think it would be too upsetting for the child, and unreasonable for the mother to do this to the father of the child. If they had been married, we probably would be looking at a different scenario right now . . . and frankly, if they get married, we may have to revisit this question."

The judge denied Ms. Searle's petition. The court's order, dated April 19, 1999, stated that the relocation did not meet the requirements of Tenn. Code. Ann. § 36-6-108, in that it had no reasonable purpose, because of the lack of a long-term commitment between the mother and the boyfriend.

Ms. Searle and Mr. Moretti married shortly thereafter, and Ms. Searle filed a Motion to Alter or Amend the earlier judgment. Mr. Pfister responded with a motion for the court to require the parties and Alexis to undergo psychological evaluation to determine which of the parents would be best able to serve as custodial parent, and to evaluate how the proposed move to California might affect the child. The court granted the motion, and Dr. William Kenner conducted the requested evaluations.

On June 23, 1999, the court conducted a hearing on the Motion to Alter or Amend. Dr. Kenner was called to the stand, where he was questioned closely by the judge, then by the attorneys for both parties. Ms. Searle's sister also testified. Ruling from the bench, the judge stated that he found both Ms. Searle and Mr. Pfister to be fit parents, but that although it was a close call, Ms. Searle was the better caretaker for the child in the present situation. He also found there to be a reasonable purpose behind Ms. Searle's plan to relocate, and that she was not acting out of a vindictive motive. The court accordingly granted Ms. Searle's Motion to Alter or Amend, leaving her free to move to California with her husband. The court's final order, filed on July 6, 1999, included a detailed schedule of visitation for Mr. Pfister.

## II.
### A DETOUR THROUGH THE CIRCUIT COURT

The appeal of this matter reached the Court of Appeals by a route that can only be called circuitous. Mr. Pfister filed his Notice of Appeal on July 13, 1999. The notice did not specify to which court the appeal was to be taken. For reasons not apparent from the record, the appeal was taken to the Circuit Court of Williamson County, rather than to this court. Mr. Pfister filed several motions in the circuit court, to none of which Ms. Searle responded. Finally, on December 22, 1999, after the case had been set for trial, she filed a Motion to Dismiss, on the ground that the circuit court did not have jurisdiction of the appeal.[1]

The circuit court conducted a hearing on the question of jurisdiction on January 19, 2000. The following day, the judge ruled that the court did indeed have jurisdiction of all the issues raised in this appeal, and that in any case Ms. Searle had waived any objection she may have had to the court exercising its subject matter jurisdiction by failing to file a timely objection. The judge reserved all other matters until the final hearing, which was scheduled for February.

Ms. Searle subsequently filed a Motion to Alter or Amend the circuit court's order. During the hearing on the motion, conducted before a different judge, the attorneys for both parties announced to the court their agreement that the circuit court lacked subject matter jurisdiction. The judge accordingly remanded the case to the juvenile court, and authorized the clerk of that court to transmit the record to the Court of Appeals.

## III.
### THE QUESTION OF JURISDICTION

Ms. Searle argues that the Court of Appeals does not have jurisdiction of this matter, because of defects in the manner in which Mr. Pfister initiated the appeal. She points out that his Notice of Appeal was never filed in this court, despite provisions in the Tennessee Rules of Appellate Procedure designed to compel a litigant to act promptly to secure his right of appeal.

Rule 4(a), Tenn. R. App. P., reads in pertinent part,

> In an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from; . . . .

Earlier versions of Rule 5(a), Tenn. R. App. P., also required the appellant or the appellant's counsel to serve the appellate court clerk with a copy of the notice of appeal. The rule was amended

---

[1] Tenn. Code. Ann. § 37-1-159(a) permits the circuit court to hear appeals from the juvenile court "from any final order or judgment in a delinquency proceeding, unruly child proceeding, or dependent and neglect proceeding." Of course the present case involves a different kind of proceeding.

in 1997 to place that responsibility upon the trial court clerk. *See Cobb v. Beier*, 944 S.W.2d 343, 345 (Tenn. 1997).

Appellee correctly points out that an appellant's failure to file the notice of appeal with the trial court within thirty days of the entry of a final judgment deprives this court of jurisdiction in the matter appealed from. *Jefferson v. Pneumo Services Corp.*, 699 S.W.2d 181, 184 (Tenn. Ct. App. 1995). She is also correct in noting that the rules themselves provide that the appellate courts may not waive or extend the thirty day time period.

In the present case, however, the appellant did file his Notice of Appeal in the trial court within the time allowed by Rule 4(a). It is true that the notice did not name the court to which the appeal was to be taken, in violation of Rule 3(f), Tenn. R. App. P., resulting in an unproductive detour to a court without jurisdiction. However, unlike a failure to file a Notice of Appeal in a timely way, defects in the contents of the notice may be (but need not be) waived by this court under another rule of appellate procedure.

> **Rule 2. Suspension of Rules. –** For good cause, including the interest of expediting decision upon any matter, the Supreme Court, Court of Appeals, or Court of Criminal Appeals may suspend the requirements or provision of any of these rules in a particular case on motion of a party or on its motion and may order proceedings in accordance with its discretion, except that this rule shall not permit the extension of time for filing notice of appeal prescribed in Rule 4, an application for permission to appeal prescribed in Rule 11, or a petition for review prescribed in Rule 12.

The appellee has cited to us two unpublished opinions in which appeals involving child custody were dismissed by this court because the appellants failed to comply with the notice procedures of the Tennessee Rules of Appellate Procedure. However, both of those cases, *Fry v. Cermola*, App. No. 03A01-9507-CV-00246 (Tenn. Ct. App. January 29, 1996), and *Poff v. Poff*, App. No. 01-A-01-9301-CV-00024 (Tenn. Ct. App. March 17, 1993), are easily distinguishable from the present one. The appellants in the cited cases failed to comply with the filing requirements of Rule 4, while in the present case it is undisputed that the appellant did comply with Rule 4.

It thus appears to us that in accordance with Rule 2, the Court of Appeals possesses the jurisdiction to hear this case, and we exercise our discretion by choosing to do so, in order to afford the parties a full review of the trial court's actions.[2]

---

[2] While we exercise the authority given to us by Rule 2 in this case, it is not a cure-all for every failure to file a proper notice of appeal. For instance, we have held that the failure to include individuals in the notice of appeal excluded those individuals as appellants. *See Town of Carthage v. Smith County*, No. 01-A-01-9308-CH-00391, 1995 WL 92266 (Tenn. Ct. App. 1995).

# IV.
## THE TRIAL COURT'S ORDER

There has been much litigation over the years involving the circumstances under which a custodial parent may move with a child to another jurisdiction over the objections of a non-custodial parent. The courts have struggled to come up with a formula that protects the best interest of the child, while balancing the custodial parent's freedom of movement with the non-custodial parent's visitation rights. A good history of the case law and the shifting standards of the so-called Law of Removal may be found in *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996).

In 1998, the Legislature established statutory standards to govern parent relocation, by enacting Tenn. Code. Ann. § 36-6-108. The relevant portions of that statute, for the purposes of the case before us, read as follows:

> (d) [T]he parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
>
> (1) The relocation does not have a reasonable purpose;
> (2) The relocation would pose a threat of specific and serious harm to the child which outweighs the threat of harm to the child of a change of custody; or
> (3) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.
> . . .
> (e) If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child . . . .

[1998 Pub. Acts, ch. 910, § 1, eff. May 7, 1998].

The trial court specifically found that the proposed relocation had a reasonable purpose, that it did not pose a threat of specific and serious harm to Alexis, and that Ms. Searle's motive for relocating was not vindictive. Findings of fact by a trial court in a civil action are presumed to be correct, and will not be reversed by this court unless the preponderance of the evidence is otherwise. Rule 3(d), Tenn. R. App. P.

The appellant argues that the trial court erred in allowing Ms. Searle to move to California, because the evidence indicates that she was motivated by a vindictive purpose. To support this theory, he was able to cite incidents from the long struggle between the parties, where Ms. Searle tried to limit his contact with Alexis, and even to deny that he was Alexis' real father. The appellant also cites the testimony of Dr. Kenner, who acknowledged Ms. Searle's strong desire to put distance between herself and Mr. Pfister. When the court asked Dr. Kenner if it would be a true statement that Ms. Searle would be very pleased "if she could move away from Keith Pfister and not have him

involved in her life or the life of her minor child," Dr. Kenner responded, "Oh, if it could be written on the courthouse wall, it's that kind of true statement."

But the trial court also credited Dr. Kenner's testimony that Ms. Searle's relationship with Mr. Moretti had deeper roots than a mere desire to get away from Mr. Pfister, and that it was a sensible career move for Mr. Moretti to take the position in California. In his ruling from the bench, the judge stated,

> "[B]ased on what I've heard, based on the expert's proof, based on what we've heard from the prior hearing, I can't honestly say that the purpose or motive here is vindictive and specifically designed to defeat Mr. Pfister's visitation rights. There is a clear reason to do this. Mr. Moretti is a photographer. He's going to move to California or New York to further his career. . . . She is following her husband for a career opportunity, notwithstanding the fact that she is probably gleeful at the idea that she is able to put 3,000 miles between she and Mr. Pfister. I don't think that is her motive, and I don't think it's without a purpose. I think the purpose is to further her husband's career and not designed to defeat or deter visitation."

The court also considered the effect of the move on Alexis, and apparently agreed with Dr. Kenner's assessment that the level of acrimony and litigation between Ms. Searle and Mr. Pfister was more detrimental to her well-being than the question of whether she wound up living in California or in Tennessee.

The evidence does not preponderate against the trial court's finding that Ms. Searle's motive for wishing to move to California was not vindictive. Even if it did, however, in light of Mr. Pfister's unremitting efforts to undermine Ms. Searle's relationship with Alexis, which were at least as egregious as her attempts to limit his role in her life, we believe that the court would have been justified in granting Ms. Searle permission to relocate on the basis of Alexis' best interests. *See* Tenn. Code. Ann. § 36-6-108(e).

**V.**

The order of the trial court is affirmed. Remand this cause to the Juvenile Court of Williamson County for further proceedings consistent with this opinion. Tax the costs on appeal to the appellant, Keith Pfister.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.