# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 11, 2007 Session

## ALLEN SHAWN DYE v. AMANDA LAYNE FOWLER

**Appeal from the Chancery Court for Lewis County**
**No. 3606     Russ Heldman, Judge**

---

**No. M2006-01896-COA-R3-CV - Filed on May 23, 2007**

---

The primary residential parent of the parties' eleven-year-old child requested permission to relocate to Georgia because her husband accepted employment that provided a significant increase in pay and better opportunities for advancement. The father opposed the relocation. The trial court, which made no findings of fact, denied the request based upon the conclusion the relocation did not have a reasonable purpose. We have determined the evidence preponderates in favor of the finding that the mother had a reasonable purpose for relocating to Georgia. Therefore, we reverse the judgment of the trial court and remand with instructions to grant the requested relocation to Georgia.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed and Remanded**

FRANK G. CLEMENT, JR., J., delivered the opinion of the court, in which WILLIAM C. KOCH, JR., P.J., M.S., and PATRICIA J. COTTRELL, J., joined.

Donald W. Schwendimann, Hohenwald, Tennessee, for the appellant, Amanda Layne Fowler.

Dana Dye, Centerville, Tennessee, for the appellee, Allen Shawn Dye.

## OPINION

Amanda Dye Fowler ("Mother") and Allen Shawn Dye ("Father") were granted a divorce on April 18, 1997 in the Chancery Court of Lewis County, Tennessee. They had one child, a daughter, who was two years old at the time of the divorce.[1] In the Final Divorce Decree, Mother was designated as the primary residential parent, and Father was afforded visitation on alternate weekends, one weeknight per week, and alternate holidays.

Mother married Steve Fowler in 1997, a few months after the divorce. Mr. Fowler, who was pursuing a career in the forestry industry, accepted employment as a procurement forester near

---

[1]The child was eleven years old at the time this matter came on for hearing.

Owensboro, Kentucky at a Weyerhaeuser facility.[2] With the consent of Father and pursuant to an agreed order entered in the Chancery Court of Lewis County that approved the relocation of their daughter, Mother moved with the parties' daughter to Owensboro in October of 1997 to reside with her new husband. Because Father remained in Lewis County, the parties agreed to amend the parenting plan and visitation schedule to account for their daughter's relocation to Owensboro, Kentucky.

After working at the Weyerhaeuser facility in Owensboro the next nine years, Mr. Fowler realized that he had little opportunity to advance his career at the Owensboro facility. This was due to the fact that his supervisor, who was only a few years older than Mr. Fowler and had lived in the Owensboro community most of his life, intended to remain at the Owensboro facility until retirement, and there were no other reasonable opportunities for advancement.

In February of 2006, Mr. Fowler attended a forestry conference in Virginia at which time an enticing opportunity arose. At the conference, the procurement manager of the Weyerhaeuser facility near Statesboro, Georgia approached Mr. Fowler about an opportunity at the Georgia facility which presented an immediate $8,000 increase in salary and provided Mr. Fowler with career advancement opportunities that were not available to him in Kentucky.

After Mr. Fowler shared the news of the opportunity with Mother, they agreed it was too good to turn down. Accordingly, Mother contacted Father to request his permission to relocate their daughter to Statesboro, Georgia. After considering the informal request, Father advised Mother that he would not consent to the relocation. Although Father had informed Mother that he would not voluntarily consent to the relocation, Mother and Mr. Fowler agreed that it was in the family's best interest that Mr. Fowler accept the job in Georgia. Accordingly, Mr. Fowler moved by himself to Georgia to begin his new job at the Weyerhaeuser facility.[3]

On March 6, 2006, Mother mailed formal notice of her intent to relocate to Statesboro, Georgia pursuant Tenn. Code Ann. § 36-6-108(a) (2006). Three weeks later, on March 28, 2006, Father filed a Petition Opposing Relocation of Child and for Change of Custody. The matter was tried on July 13, 2006, at which time the trial court heard testimony from a number of witnesses in addition to Father and Mother. Testifying on behalf of Father were Mr. Fowler's supervisor at the Kentucky facility, the paternal grandfather, a deacon at Father's church, Father's wife, and one of Father's friends. Testifying on behalf of Mother were a regional manager for Weyerhaeuser and her husband, Mr. Fowler. The trial court took the matter under advisement at the conclusion of the hearing. Three weeks later, the trial court issued its ruling wherein it concluded that the relocation

---

[2] When Mr. Fowler began employment at the facility, Willamette owned and operated the facility. Weyerhaeuser later bought the facility.

[3] The record indicates Mr. Fowler commuted from Savannah, Georgia until he purchased a home near Statesboro. At the trial, Mr. Fowler indicated his residence was in Owensboro. The exact date of his move and the details of his living situation during the transition period is unknown and unimportant to this appeal.

did not have a reasonable purpose within the meaning of Tenn. Code Ann. § 36-6-108(d), and relocation was not in the best interest of the daughter. This appeal followed.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is *de novo* and we presume that the findings of fact are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.*, 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed *de novo* with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

## REASONABLE PURPOSE OF RELOCATION

In 1998, the Tennessee General Assembly enacted Tenn. Code Ann. § 36-6-108, which applies when a parent seeks to relocate outside the state or more than 100 miles away from the other parent. *See Kawatra v. Kawatra*, 182 S.W.3d 800, 802 (Tenn. 2005). In pertinent part the statute provides:

> The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
>
> (A) The relocation does not have a reasonable purpose;
>
> (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
>
> (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.

Tenn. Code Ann. § 36-6-108(d). Pursuant to the statute, the parent who spends the greater amount of time with the child is favored with a presumption that the relocation shall be granted unless the parent opposing relocation can establish one of the three factors set out in subsection (d). *See Webster v. Webster*, No. W2005-01288-COA-R3-CV, 2006 WL 3008019, at *8 (Tenn. Ct. App. Oct. 24, 2006).

The trial court based its decision on the first of the three factors, whether the relocation did not have a reasonable purpose. Thus, we will focus our review on that factor.

We first note that the trial court did not make any findings of fact. The trial court merely concluded that, "the [Mother's] proposed relocation of the parties' minor child to the Statesboro, Georgia area does not have a reasonable purpose within the meaning of T.C.A. Section 36-6-108(d) and further finds that such relocation is not in the best interests of the child."[4] Because the trial court did not make any findings of fact, there is no presumption of correctness. *Brooks*, 992 S.W.2d at 405. Accordingly, we will conduct our own independent review of the record to determine where the preponderance of the evidence lies. *Id*.

This Court has consistently held that a salary increase and career advancement opportunities "can be a factual predicate to constitute a reasonable purpose for relocation." *Roberts v. Roberts*, No. E2005-01175-COA-R3-CV, 2005 WL 2860199, at *6 (Tenn. Ct. App. Oct. 31, 2005) (citing *Price v. Bright*, No. E2003-02738-COA-R3-CV, 2005 WL 166955, at *11 (Tenn. Ct. App. Jan. 26, 2005); *Collins v. Coode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097, at *4 (Tenn. Ct. App. Apr. 27, 2004); *Butler v. Butler*, No. M2002-00347-COA-R3-CV, 2003 WL 367241, at *2 (Tenn. Ct. App. Feb. 20, 2003); *Elder v. Elder*, No. M1998-00935-COA-R3-CV, 2001 WL 1077961, at *5 (Tenn. Ct. App. Sept. 14, 2001); *Leach v. Leach*, No. W2000-00935-COA-R3-CV, 2001 WL 720635, at *4 (Tenn. Ct. App. June 25, 2001); *Connell v. Connell*, No. 03A01-9808-CV-00282, 2000 WL 122204, at *4 (Tenn. Ct.App. Jan. 25, 2000)); *see also Dunkin v. Dunkin*, No. M2002-01899-COA-R3-CV, 2003 WL 22238950, at *5 (Tenn. Ct. App. Sept. 30, 2003). It is not enough, however, that there exists a mere hope or belief of a better opportunity or a salary increase. *Mitchell v. Mitchell*, No. M2004-00849-COA-R3-CV, 2005 WL 1521850, at *3 (Tenn. Ct. App. June 27, 2005); *Slaton v. Ray*, No. M2004-01809-COA-R3-CV, 2005 WL 2756076, at *3 (Tenn. Ct. App. Oct. 24, 2005).[5] Therefore, the employment opportunity must be more certain than speculative or hopeful.

Some of the employment benefits afforded Mr. Fowler with Weyerhaeuser in Statesboro, Georgia are substantial, certain and immediate. For one, it is undisputed that Mr. Fowler's salary increased from $67,000 to $75,000 per year by taking the job in Statesboro, Georgia. In addition to the substantial and immediate salary increase, the opportunities for career advancement with Weyerhaeuser in Georgia were most likely in contrast to the certainty of no opportunities if he remained in Kentucky. The down-side to remaining at the Kentucky facility was established by Mr. Fowler's former supervisor in Kentucky, Dan Allard, who is approximately the same age as Mr. Fowler and intended to remain at the facility in the same position until he retired, leaving no room for Mr. Fowler to advance. The pertinent portion of Mr. Allard's testimony is as follows:

---

[4]The trial did, however, state, "All the witnesses and parties were highly credible."

[5]We recognize that *Slanton* and *Mitchell* rely, in part, on *O'Bannon v. O'Bannon*, No. E2002-02553-COA-R3-CV, 2003 WL 22734673, at *2 (Tenn. Ct. App. Nov. 20, 2003), and that *O'Bannon* was designated on May 17, 2004 as "Not for Citation" pursuant to S. Ct. R. 4(F)(2), which prohibits the citation of the opinion as authority. Thus, we do not cite *O'Bannon* for any purpose, however, we are not prohibited from citing to *Slanton* and *Mitchell.*

Q: Now, if you're looking forward to remaining at the facility until your retirement, there's nowhere for Mr. Fowler to move up; is there? He's a procurement forester. You're the procurement manager. And [Weyerhaeuser]'s a lean and mean organization and it's flat?

A: Yes, sir, that would be correct.
. . .

Q: So he's got no chance for advancement into your job, certainly, if you're going to be there?

A: If I was there, yes, sir.

Further, Mr. Allard testified that Weyerhaeuser was looking to sell the "fine paper" division of its business, which constituted a significant part of the Kentucky facility. While Mr. Allard admitted the potential buyout of Weyerhauser's "fine paper" division did not create an imminent threat to Mr. Fowler's employment, Mr. Allard explained that Mr. Fowler was essentially in a dead-end job if he remained at the Kentucky facility. In direct contrast to the dead-end job in Owensboro, Kentucky, the record reveals that Mr. Fowler is afforded significant employment opportunities by moving to Statesboro, Georgia. As Robert Shaffer, Regional Manager for Weyerhaeuser, explained:

. . . [Mr. Fowler] has the potential of growth to move up in the company. He's a good, solid thinker. And I'd love for him, if he's agreeable to head down [to Georgia] and gain that experience so that he would have the opportunity to move up in the organization.
. . .

Q: Why is it important for Mr. Fowler's career advancement to have taken this job?

A: Mostly – we're so flat in our – in procurement forester organizations and our company in particular we're pretty lean and mean, and it's very difficult within a mill – I say difficult. It's almost impossible to get a promotion. We have wood procurement managers and then we have wood procurement foresters, and to gain the kind of experience that you need to be a wood procurement manager and be available . . . you need to have varied experience. If I'd lost one today, I couldn't have gone and tapped Steve Fowler because he didn't have the experience. Now, with the move that he's making, and he gets that under his belt in the near future, then I would identify him as a person that I could go get as a wood procurement manager.
. . .

[G]etting [timber negotiating] exposure down there with that kind of – a different clientele, a different geographic region in the soft wood business will be very good for his career.

Mr. Shaffer additionally discussed the various businesses within Weyerhaeuser – hard wood, soft wood, paper, and pulp – and how Mr. Fowler's relocation to Georgia would introduce him to the various niches in Weyerhaeuser's market that, coupled with Mr. Fowler's "extremely good" relationship skills, would make him an attractive candidate for management. Therefore, it is clear to this Court that by accepting the position in Georgia, Mr. Fowler's career advancement opportunity is significant.

Father did not dispute the fact Mr. Fowler received an $8,000 raise by moving to Statesboro, Georgia; however, he contends that Mr. Fowler and Mother's total income will decline as the result of Mother's desire to be a homemaker for her three children, two of whom were born after she married Mr. Fowler.[6] We, however, find Father's contention is not supported by the record and, therefore, it is without merit. Father asserts that Mother would lose $22,000 of income by becoming a homemaker. This assumption on Father's part is based on the projection Mother "could" earn up to $22,000 a year if she worked full time, however, she has not worked full time since her daughter was born, and her daughter was eleven years old at the time of the hearing. Thus, the record does not support Father's speculative contention. Moreover, the record establishes that the children would benefit by Mother being a full-time homemaker, and the financial loss, if any, is more than offset by Mr. Fowler's immediate and significant increase in salary and the significant prospects of other employment advantages afforded him in Statesboro, Georgia.

Father, as the opponent to relocation, had the burden of establishing that the proposed relocation did not have a reasonable purpose, *see Webster*, 2006 WL 3008019, at *8, and he failed to satisfy his burden of proof. Moreover, the evidence in the record preponderates in favor of a finding that Mother had a reasonable purpose for the proposed relocation.

### BEST INTERESTS ANALYSIS

"The parent spending the greater amount of time with the child *shall be permitted to relocate* with the child *unless* the court finds: (A) The relocation does not have a reasonable purpose; . . ." (emphasis added). Tenn. Code Ann. § 36-6-108(d). The relocation statute also makes it clear that the court only engages in a second phase of the analysis, the so-called best interest analysis, if the court reached the determination that there was not a reasonable purpose for the proposed relocation. Tenn. Code Ann. § 36-6-108(e).

> [T]he statute is plainly structured so that the issue of the best interest of the child *is not reached* unless and until a ground to deny relocation is established. This structure suggests that the "reasonable purpose" ground is not intended to be a guise under which the trial court goes directly to the question of whether the move is in the child's best interest, as was the common law under cases preceding *Aaby v. Strange*.

---

[6] The marriage of Mr. Fowler and Mother has produced two children. Thus, three children reside with and are cared for by Mother.

This statutory structure facilitates the goals, reiterated in *Aaby*, of limiting judicial intervention and making disputes easier to resolve if they must be litigated.

*Webster*, 2006 WL 3008019, at \*14 (citing *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996)) (emphasis in original). Having determined pursuant to Tenn. Code Ann. § 36-6-108(d) that Mother has a reasonable purpose for relocating with the parties' daughter to Statesboro, Georgia, no further analysis is necessary, *see* Tenn. Code Ann. § 36-6-108(e); *Webster*, 2006 WL 3008019, at \*14, and the requested relocation is to be granted.

## IN CONCLUSION

We reverse the trial court's decision to deny the requested relocation to Statesboro, Georgia, and we remand this matter to the trial court with instructions to enter an order to grant the requested relocation.

Our decision to grant the relocation request is without prejudice to either parent to seek a modification of the parenting plan and visitation schedule due to the change of circumstances resulting from the pending relocation to Georgia.

The judgment of the trial court is reversed, and this matter is remanded with costs of appeal assessed against Appellee, Allen Shaw Dye.

_____
FRANK G. CLEMENT, JR., JUDGE