IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 27, 2013 Session

**THOMAS GOODMAN RUTHERFORD v. MELODEY JOICE LAWSON RUTHERFORD**

**Direct Appeal from the Circuit Court for Davidson County**
**No. 05D-692     Joe Binkley, Jr., Judge**

_____

**No. M2012-01807-COA-R3-CV - Filed May 7, 2013**

_____

**SEPARATE CONCURRENCE**

_____

JUDGE HOLLY M. KIRBY, concurring separately:

I have carefully considered Judge Stafford's energetic dissent in this case, and find that I cannot agree. I submit this separate concurrence to explain my position.

I note at the outset that the question of whether Father in this case actually filed a Rule 6.02 motion to enlarge time appears far from clear. However, assuming *arguendo* that he did, I would not apply Rule 6.02 to this case. For all of the dissent's in-depth discussion of Rule 6.02 and the concept of excusable neglect, it contains only passing reference to the language in Tennessee's parental relocation statute, and no discussion at all of whether application of Rule 6.02 squares with the express language, history, and legislative intent of the parental relocation statute. This is, I believe, a crucial oversight.

I agree with the majority opinion on the discussion of the plain language of Tennessee Code Annotated §36-6-108, and its overall purpose.

The history and intent behind Section 36-6-108 are equally important to the decision in this case. Both are discussed at some length in this Court's opinion in *Webster v. Webster*, No. W2005-01288-COA-R3-CV, 2006 WL 3008019 (Tenn. Ct. App. Oct. 24, 2006).

In *Webster,* the Court noted first that, years ago in Tennessee, "the custodial parent had virtually unfettered authority to move the child away from the non-custodial parent, regardless of the reason or the effect on the child's relationship with the non-custodial

parent." *Id.* at \*10 (citations omitted). As time went on, the value of involving both parents in child-rearing became more widely recognized. As there was no statute governing the issue, trial court decisions varied widely. The Tennessee Supreme Court, struggling with clarifying the law for trial courts and parents alike, issued a confusing series of decisions that sparked an increase in parental relocation cases and were "admittedly obscure." *Id.* at \*11.

In an effort to quell the confusion and settle the law, the Tennessee Supreme Court issued its decision in *Aaby v. Strange*, 924 S.W.2d 623 (Tenn. 1996). The *Aaby* case set forth a framework for parental relocation cases, and stated expressly that its goals were to "(1) limit[] judicial intervention in post-divorce family decision-making, and (2) mak[e] disputes easier of resolution if they must be litigated." *Webster,* 2006 WL 3008019, at \*11 (quoting *Aaby,* 924 S.W.2d at 629). The standard adopted by the *Aaby* Court "made it quite difficult for a non-custodial parent to defeat the custodial parent's petition to relocate." *Id.* at \*12. *Aaby* also included a spirited dissent. *Id.* at \*12-13.

In the wake of *Aaby*, Tennessee's legislature enacted a parental relocation statute that largely followed the *Aaby* framework but also incorporated some of elements advocated by the dissent. *Id.* at \*13. Importantly for our purpose in this case, the *Webster* Court describes the structure of the parental relocation statute as "rigid," designed to "facilitate[] the goals, reiterated in *Aaby*, of limiting judicial intervention and making disputes easier to resolve if they must be litigated." *Id.* at \*14.

Against this backdrop, we can see that applying Rule 6.02 to Section 36-6-108 to permit trial courts to enlarge the 30-day mandatory deadline set forth in the statute is inconsistent with the history and intent of Tennessee's parental relocation statute. Rather than leave the decision in parental relocation matters to trial courts, with widely varying approaches, results, and timelines, the legislature chose to enact a statute with a mandatory structure that drastically limits the trial court's discretion and compresses the timeline for resolution.

The reason for this is clear. Parental relocation cases are often prompted by a time-sensitive opportunity for the custodial parent, such as a job offer. If the parent opposing relocation is permitted to unduly delay, the opportunity for the custodial parent may be lost. The legislature made a policy decision to permit the non-custodial parent to file a petition opposing the relocation, but only within the "rigid" structure of the statute, to limit judicial intervention and get the case resolved quickly. Allowing a trial court to apply Rule 6.02 to enlarge the deadline for initiating the action opens the door for the exception that swallows the rule, and is counter to the history and intent of the parental relocation statute.

Parental relocation cases are frequently heartbreaking, with profound competing considerations and impact on both parents and the subject children. Delay does not improve

them. The legislature has enacted a statute with explicit directions to the courts on the resolution of such cases, and we are required to follow the clear legislative directives in the statute.

Moreover, even if Rule 6.02 were applicable, which it is not, there are no circumstances in this case that would constitute excusable neglect. Mother's notice to Father informed him of the thirty day period to file a petition, as required under the statute. Whether he had a lawyer or not, Father knew about the 30-day deadline and simply missed it.

For all of these reasons, I concur with the majority's reversal of the trial court's decision.

_____
HOLLY M. KIRBY, JUDGE

_____

HOLLY M. KIRBY, JUDGE