# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### March 27, 2013 Session

## THOMAS GOODMAN RUTHERFORD v. MELODEY JOICE LAWSON RUTHERFORD

**Direct Appeal from the Circuit Court for Davidson County**
**No. 05D-692      Joe Binkley, Jr., Judge**

---

**No. M2012-01807-COA-R3-CV - Filed May 7, 2013**

---

Mother, who spent greater time with the parties' minor child, notified Father via certified letter of her intent to relocate out of state. Thirty-three days later, Father filed a petition in opposition to the move. The trial court allowed Father to oppose relocation, despite his failure to formally oppose the move within thirty days, noting that Mother had learned of Father's opposition within the thirty-day period and that she had not relocated until "well after" Father filed his petition.

In this statutory construction case, we conclude that Tennessee's parental relocation statute, Tennessee Code Annotated section 36-6-108, mandates that a parent wishing to oppose relocation file a petition in opposition within thirty days of receipt of notice of the proposed relocation. If no written petition in opposition is timely filed, the parent proposing to relocate with the child shall be permitted to do so, notwithstanding the absence of harm or prejudice to the relocating parent due to the untimely petition. Because Father failed to file a written petition in opposition to Mother's proposed relocation within thirty days of receipt of her certified letter, we find the trial court erred in conducting any further analysis pursuant to section 36-6-108. The decision of the trial court is reversed, and Mother is permitted to relocate to Omaha, Nebraska, with the minor child. Father's request for appellate attorney fees is denied, and all remaining issues are deemed pretermitted.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Reversed**

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which HOLLY M. KIRBY, J., concurred separately and J. STEVEN STAFFORD, J., dissented.

George Davis, Brentwood, Tennessee, for the appellant, Melodey Joice Lawson Rutherford

Paul A. Rutherford, Wende J. Rutherford, Nashville, Tennessee, for the appellee, Thomas Goodman Rutherford

**OPINION**

## I. FACTS & PROCEDURAL HISTORY

Thomas Goodman Rutherford ("Father") and Melodey Joice Lawson ("Mother") divorced in 2007 after an approximate seven-year marriage. The parties have one minor child. In 2010, the parties entered into an "Agreed Order," which incorporated a revised Parenting Plan allowing Mother 214 days of parenting time with the child and allowing Father 151 days with the child.

On January 3, 2012, Mother sent Father a certified letter notifying him of her intent to relocate to Omaha, Nebraska. The letter, which Father acknowledged receiving on January 4, 2012, stated as follows:

> This is to notify you, that on March 5, 2012, I plan on moving to Omaha Nebraska.
>
> My company is transferring me there to take a new position.
>
> Thomas, you may file a petition in opposition to my move within thirty days of receipt of this notice. If you do that we will have to fight this in court. Otherwise we need to sit down and come up with a new parenting plan that will make the best of this for us all.

Apparently on January 25, 2012, Mother and Father met to discuss Mother's proposed relocation. It is undisputed that at the meeting, Father verbally expressed his opposition to relocation, and the parties were unable to reach an agreement regarding the proposed relocation.

On February 6, 2012–33 days after receiving Mother's relocation notice letter–Father filed a "Petition in Opposition to Proposed Parental Relocation, and to Modify" ("Petition in Opposition"). Father alleged that relocation would be detrimental to the child, and he sought to be named the child's primary residential parent. In response, Mother filed a "Petition to Relocate" claiming that the move had a reasonable purpose, that it would not harm the child, and that it had no vindictive motive. Additionally, Mother noted that Father

had failed to file a petition in opposition to the move within thirty days of receipt of the certified notice letter,[1] and, therefore, she requested that she be allowed to relocate and that Father's visitation be modified as set forth in an attached proposed Parenting Plan.

On February 13, 2012, the trial court entered a Temporary Restraining Order preventing Mother from relocating with the minor child. Thereafter, on April 25, 2012, Mother filed a "Motion to Determine Status of Case Pursuant [to] TCA 36-6-108(g)" questioning why she had been temporarily enjoined from relocating with the child when Father had failed to timely oppose the move in writing. In response, Father argued that his untimely filing was the result of excusable neglect because "he was without the financial resources to hire an attorney at the time he received notice of Mother's intent to relocate" and because his present attorney, who agreed to serve as a favor to Father's father, was unable to meet with him until after the thirty-day period had expired.[2] Following a hearing on May 22, 2012, the trial court entered an Order finding that Tennessee Code Annotated section 36-6-108(g)'s thirty-day time period should not "be applied to bar Father's right to contest Mother's relocation[,]" noting that "[t]here is no proof of harm or prejudice to Mother resulting from the date of his filing."

A trial on the merits was conducted in July 2012. On August 1, 2012, the trial court entered an order[3] in which it rejected Father's argument that the parties were spending substantially equal time with the minor child; the court concluded that Mother spent greater time with the child.[4] However, the trial court found that Mother's proposed relocation lacked a reasonable purpose because it was the result of a voluntary lateral move–rather than an employer "transfer" as she had alleged–and because Mother had "only a belief and a hope that she w[ould] advance in her career in her position in Nebraska[.]" After determining that the move lacked a reasonable purpose, the court conducted a best interest analysis, and it determined that relocation was not in the child's best interest. It then designated Father as the child's primary residential parent. In light of the trial court's findings, a new parenting

---

[1]On appeal, Father argues that Mother waived the defense of Father's failure to file his Petition in Opposition within 30 days because she failed to raise the issue in her March 9, 2012 Answer to Father's Petition in Opposition. However, we find no waiver, as Mother specifically asserted this defense in her February 9, 2012 Petition to Relocate.

[2]The trial court ultimately found that excusable neglect was not an issue in the case because it determined that the 30-day period for filing a petition in opposition was permissive, rather than mandatory. The excusable neglect issue is not pursued on appeal.

[3]The order specifically incorporated the trial court's oral findings following the July 3, 2012 hearing.

[4]This finding is not challenged on appeal.

plan was entered on August 1, 2012, and a final order was entered on October 26, 2012. Mother timely appealed to this Court.

## II. ISSUES PRESENTED

On appeal, Mother asks this Court to construe Tennessee Code Annotated section 36-6-108 to determine whether its thirty-day period for filing a petition in opposition to relocation is permissive or mandatory. Additionally, Mother asks this Court to find that the evidence preponderates against the trial court's conclusion that her relocation lacked a reasonable purpose, and Father asks this Court for an award of attorney fees pursuant to Tennessee Code Annotated section 36-6-108(I) and/or because Mother's appeal is frivolous.

For the following reasons, we reverse the decision of the trial court, and we permit Mother to relocate to Omaha, Nebraska, with the minor child.

## III. STANDARD OF REVIEW

This is a matter of statutory interpretation, which presents a question of law. *In re Estate of Trigg*, 368 S.W.3d 483, 490 (Tenn. 2012). Accordingly, our review is de novo, with no presumption of correctness afforded to the trial court's legal conclusions. *Id.* As our Supreme Court has explained:

> When interpreting statutes, a reviewing court must ascertain and give effect to the legislative intent without restricting or expanding the statute's intended meaning. The courts must examine the language of the statute and, if the language is unambiguous, apply the ordinary and plain meaning of the words used. Furthermore, every word in a statute is presumed to have meaning and purpose. In short, "[t]he cardinal rule of statutory construction is to effectuate legislative intent, with all rules of construction being aides to that end."

*U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 277 S.W.3d 381, 386 (Tenn. 2009) (citations omitted).

## IV. DISCUSSION

### *A. Requirements of Tennessee Code Annotated section 36-6-108*

The requirements and purposes of Tennessee's parental relocation statute, Tennessee Code Annotated section 36-6-108, have previously been explained by this Court:

> "In 1998, our state legislature enacted Tennessee Code Annotated section 36-6-108, which applies when a parent seeks to relocate outside the state or more than 100 miles away from the other parent residing within the state." *Kawatra v. Kawatra*,182 S.W.3d 800, 802 (Tenn. 2005). The statute was enacted to provide consistency in relocation proceedings. *Helton v. Helton*, No. M2002-02792-COA-R3-CV, 2004 WL 63478, at *4 (Tenn. Ct. App. Jan. 13, 2004). It provides that a parent who desires to relocate shall send notice by mail to the other parent of his or her intent to move at least sixty days prior to the move unless excused by a court for exigent circumstances. Tenn. Code Ann. § 36-6-108(a). The notice must contain the location of the proposed new residence, reasons for the proposed relocation, and a statement that the other parent may file a petition in opposition to the move within thirty days. [Tenn. Code Ann. § 36-6-108(a)]. In the event no petition in opposition to the proposed relocation is filed within thirty days of receipt of the notice, the parent proposing to relocate with the child shall be permitted to do so. Tenn. Code Ann. § 36-6-108(g).
>
> Under the statute, the appropriate standard to be applied when the other parent does file a petition in opposition to removal of the child depends upon whether the parents actually spend substantially equal amounts of time with the child. Thus, the trial court must first decide whether the parents are "actually spending substantially equal intervals of time with the child." Tenn. Code Ann. § 36-6-108(c), (d). If they do, no presumption in favor of or against relocation arises, and the court decides the petition to relocate on the basis of the child's best interest. Tenn. Code Ann. § 36-6-108(c). "The approach differs if the parents are 'not actually spending substantially equal intervals of time with the child.'" *Kawatra*, 182 S.W.3d at 802. The statute "reflects a legislatively mandated presumption in favor of relocating custodial parents who spend 'the greater amount of time with the child.'" *Elder v. Elder*, No. M1998-00935-COA-R3-CV, 2001 WL 1077961, at *5 (Tenn. Ct. App. Sept. 14, 2001). If the parent who seeks to relocate with the child spends the greater amount of time with the child, the court "shall" permit the relocation *unless* the other parent can establish that the relocation: 1) does not have a reasonable

purpose; 2) poses a threat of specific and serious harm to the child that outweighs the threat of harm from a change of custody; or 3) is due to a vindictive motive in that it is intended to defeat or deter visitation rights of the other parent. Tenn. Code Ann. § 36-6-108(d). The parent opposing the relocation bears the burden of proof to establish one of these three grounds, and if he or she fails to do so, the relocation shall be permitted. *In re Iyana R.W.*, No. M2002-03071-COA-R3-CV, 2003 WL 23094000, at *3 (Tenn. Ct. App. Dec. 20, 2003)). If one of these three circumstances is shown, the court then proceeds to a best interest analysis. Tenn. Code Ann. § 36-6-108(e).

*Lima v. Lima*, No. W2010-02027-COA-R3-CV, 2011 WL 3445961, at *3 (Tenn. Ct. App. Aug. 9, 2011).

In this case, it is undisputed that Father filed his Petition in Opposition *thirty-three days* after he received notice, via certified letter, of Mother's intent to relocate.[5] Based upon Father's failure to file his petition within *thirty days*, Mother, relying upon section 36-6-108(g),[6] essentially argued in the trial court that she should automatically be allowed to relocate with the child without further consideration by the court. The trial court, however, determined that subsection (g) did not operate to bar Father's attempted relocation contest. It acknowledged that Father's *written* petition was untimely, but it found that the statutory purposes behind section 36-6-108 had been fulfilled and that Mother had not been prejudiced by the three day delay because Mother had undisputedly learned of Father's opposition to relocation within thirty days of her notice letter and because Mother did not actually relocate "until well after" Father filed his Petition in Opposition. Essentially, the trial court concluded that the thirty-day petition filing period is "permissive" rather than "mandatory." Therefore, notwithstanding Father's untimely petition, it inquired into the motives behind Mother's relocation, ultimately determining that they were unsatisfactory, and it conducted a best interest analysis, concluding that Father should be named the child's primary residential parent.

---

[5]In his appellate brief, Father implies that Mother's January 3, 2012 notice letter was insufficient. He briefly states, "Nowhere in the letter did Mother state that she was proposing to take the minor child with her to Nebraska when she moved[.]" It is unclear whether the sufficiency of Mother's notice was raised in the trial court, but in any event, insofar as Father attempts to challenge Mother's notice on appeal, we find that Father has waived consideration of this issue by failing to include such in his statement of the issues. **Tenn. R. App. P. 13(b)** ("Review generally will extend only to those issues presented for review.").

[6]Subsection (g) provides in part that "[i]n the event no petition in opposition to a proposed relocation is filed within thirty (30) days of receipt of the notice, the parent proposing relocation with the child shall be permitted to do so." **Tenn. Code Ann. § 36-6-108(g)**.

On appeal, we are asked to construe the stringency of Tennessee Code Annotated section 36-6-108. That is, we are asked to determine whether the statute *mandates* or simply *permits* a parent who wishes to oppose relocation to file a written petition in opposition within thirty days of receipt of relocation notice. Our inquiry primarily focuses upon subsection (g) which, again, provides in relevant part that "[i]n the event no petition in opposition to a proposed relocation is filed within thirty (30) days of receipt of notice, the parent proposing to relocate with the child *shall* be permitted to do so." **Tenn. Code Ann. § 36-6-108(g)** (emphasis added).

On appeal, Mother argues that section 36-6-108(g), by its plain language, requires the filing of a *written* petition in opposition to a proposed relocation within thirty days of receipt of relocation notice. She maintains that *oral* notification does not satisfy this requirement, that proof of harm or prejudice is not necessary to enforce the requirement, and that failure to comply with the requirement results in the proposed relocating parent being permitted to move without further consideration by the court.

In response, however, Father contends that a trial court considering a relocation request–whether or not a timely written petition in opposition has been filed–must consider both the factors set forth in subsections (d)[7] and (e)[8] of the statute. Father acknowledges that

---

[7]Tennessee Code Annotated section 36-6-108, subsection (d), provides:
(1) If the parents are not actually spending substantially equal intervals of time with the child and the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent may, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. The other parent may not attempt to relocate with the child unless expressly authorized to do so by the court pursuant to a change of custody or primary custodial responsibility. The parent spending the greater amount of time with the child shall be permitted to relocate with the child unless the court finds:
> (A) The relocation does not have a reasonable purpose;
> (B) The relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child of a change of custody; or
> (C) The parent's motive for relocating with the child is vindictive in that it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.
> . . . .

[8]Tennessee Code Annotated section 36-6-108, subsection (e), provides:
If the court finds one (1) or more of the grounds designated in subsection (d), the court shall determine whether or not to permit relocation of the child based on the best interest of the child. If the court finds it is not in the best interests of the child to relocate as defined herein, but the parent with whom the child resides the majority of the time elects to relocate, the court shall make a custody determination and shall consider all relevant factors including

(continued...)

subsection (g) "does appear to make the filing of the petition within thirty (30) days mandatory to being heard[,]" but he contends that when subsection (g) is considered in conjunction with three other subsections of the statute, the thirty-day written petition procedure appears to become "permissive or even optional."

First, Father points out that subsections (a) and (d) state that if a parent opposes relocation he or she "may" file a petition in opposition:

> (a) If a parent who is spending intervals of time with a child desires to relocate . . . the relocating parent shall send a notice . . . . The notice shall contain the following:
>
> . . . .
>
> (4) Statement that the other parent *may* file a petition in opposition to the move within thirty (30) days of receipt of the notice.
>
> . . . .
>
> (d) If . . . the parent spending the greater amount of time with the child proposes to relocate with the child, the other parent *may*, within thirty (30) days of receipt of the notice, file a petition in opposition to removal of the child. . . .

**Tenn. Code Ann. § 36-6-108(a), (d)** (emphasis added). He also suggests that subsection (b)

--------

[8](...continued)
the following where applicable:

> (1) The extent to which visitation rights have been allowed and exercised;
> (2) Whether the primary residential parent, once out of the jurisdiction, is likely to comply with any new visitation arrangement;
> (3) The love, affection and emotional ties existing between the parents and child;
> (4) The disposition of the parents to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent has been the primary caregiver;
> (5) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;
> (6) the stability of the family unit of the parents;
> (7) The mental and physical health of the parents;
> (8) The home, school and community record of the child;
> (9)(A) The reasonable preference of the child if twelve (12) years of age or older;
> (B) The court may hear the preference of a younger child upon request. The preferences of older children should normally be given greater weight than those of younger children;
> (10) Evidence of physical or emotional abuse to the child, to the other parent or to any other person; and
> (11) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child.

is "most notable[,]" and he claims that it requires the court to consider the subsection (d) and subsection (e) factors–*even when no petition in opposition is filed*–if the parties cannot agree upon a *visitation* schedule, and therefore that the legislature must have also intended for the factors to be considered in every *relocation* case.

Again, as explained above, in construing a statute we must "ascertain and give effect to the legislative intent without unduly restricting or expanding the statute's coverage beyond its intended scope." *Hathaway v. First Family Fin. Servs., Inc.*, 1 S.W.3d 634, 640 (Tenn. 1999) (citations omitted). To ascertain legislative intent, we must consider the natural and ordinary meaning of the statutory language within the context of the entire statute, avoiding a construction which would limit or expand its scope. *See In re M.R.W.*, No. M2005-02329-COA3-PT, 2006 WL 1184010, at *2 (Tenn. Ct. App. May 3, 2006) (citing *JJ & TK Corp. v. Bd. of Comm'rs*, 149 S.W.3d 628, 630-31 (Tenn. Ct. App. 2004) (citations omitted)).

This Court has previously been called upon to construe the term "shall." In *In re M.R.W.*, 2006 WL 1184010, at *2, we considered whether Tennessee Code Annotated section 36-1-113(k)–which provides that a trial court, following a parental termination hearing, "shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days"–required the vacation of a trial court order entered *after* thirty days. In ultimately determining that remand–as opposed to vacation–was required, we contrasted the decisions rendered in *Garrett v. State*, 717 S.W.2d 290 (Tenn. 1986) and *Kardoush, L.L.C. v. City of Memphis Alcohol Comm'n*, No. W2005-00104-COA-R3-CV, 2005 WL 3017602, at *3 (Tenn. Ct. App. Nov. 9, 2005).

In *Garrett*, the Supreme Court considered the use of "shall" in Tennessee Code Annotated section 4-5-314(g), which concerned the forfeiture of property to the state. *In re M.R.W.*, 2006 WL 1184010, at *2-3 (citing *Garrett*, 717 S.W.2d at 291). The statute provided:

> A final order rendered pursuant to subsection (a) or initial order rendered pursuant to subsection (b) *shall* be rendered in writing within ninety (90) days after conclusion of the hearing or after submission of proposed findings in accordance with subsection (f) unless such period is waived or extended with the written consent of all parties or for good cause shown.

*Id.* at *3 (quoting Tenn. Code Ann. § 4-5-314(g) (emphasis added)). The *Garrett* Court concluded that the word "shall," as used in subsection (g) was "directory," and therefore, that the administrative law judge's failure to render an initial order upholding the property forfeiture until *112 days* after the hearing was harmless error. *Id.* (citing *Garrett*, 717 S.W.2d at 291). In so concluding, the Court specifically noted that the legislative intent

behind the ninety-day limit in section 4-5-314 was unclear. *Id.* (citing *Garrett*, 717 S.W.2d at 291).

In contrast, in *Kardoush*, this Court held that "shall" as used in Tennessee Code Annotated section 57-3-208(e) was "mandatory." *Id.* In that case, we considered whether the Memphis Alcohol Commission lacked subject matter jurisdiction to act on a license application after the sixty-day period set out in section 57-3-208(e) had expired. *Id.* The statute provided in relevant part:

> (e) A failure on the part of the issuing authority to grant or deny the certificate within sixty (60) days of the written application for such *shall* be deemed a granting of the certificate.
>
> (f) The requirement imposed by this section to submit a certificate shall not be applicable to any applicant if:
>
> (1) The authority of the county or municipality charged with the responsibility to issue the certificate required herein shall have failed to grant or deny the certificate within sixty (60) days after written application for such certificate is filed[.]"

*Id.* (citing Tenn. Code Ann. § 57-3-208(e), (f) (2002) (emphasis added)). In *Kardoush*, we noted that "[w]hen a statute uses the word 'shall,' it is generally construed as being mandatory as opposed to discretionary. . . . On the other hand, statutory provisions concerning the time frame in which an act must be done ordinarily are considered directory rather than mandatory." *Kardoush*, 2005 WL 1017602, at *3 (citations omitted). However, we held that the legislature "clearly intended" "shall," as used in section 57-3-208, to be mandatory because, unlike the statute construed in *Garrett*, section 57-3-208 provided a remedy for failure to act within the statutorily prescribed sixty-day period. *In re M.R.W.*, 2006 WL 1184010, at *3 (citing *Kardoush*, 2005 WL 1017602, at *4); *see also id.* at *3 n.2 (noting that the statute construed in *Garrett* prescribed no consequence for failure to adhere to the ninety-day period).

Like *Kardoush*, the statute under construction here provides a remedy for failure to comply with the thirty-day period for filing a petition in opposition to relocation; "[i]n the event no petition in opposition to a proposed relocation is filed within thirty (30) days of receipt of the notice, the parent proposing to relocate with the child shall be permitted to do so." **Tenn. Code Ann. § 36-6-108(g)**. This remedy specifically aligns with the statutory purposes of providing consistency in relocation proceedings and affording a presumption in favor of relocating parents who spend a greater amount of time with the child. *See Lima*,

2011 WL 3445961, at *3 (citations omitted). Accordingly, we conclude that the legislature intended the thirty-day opposition period to be mandatory, and where timely opposition is not rendered, the factors set forth in the statute are not implicated.

We are simply unpersuaded by Father's arguments that subsections (a), (b), and (d) of the statute necessitate a different conclusion. That subsections (a) and (d) state that a parent opposing relocation "may" file a petition in opposition does not render the thirty-day petition period "permissive;" the use of "may" simply reflects the obvious–that relocation will not be opposed in every case. Additionally, we find that subsection (b) does not render the thirty-day petition period "permissive" because it merely requires the court to consider "all relevant factors" when fashioning a *visitation schedule*–not in determining whether to permit relocation. Moreover, in light of the statute's requirement that an objecting parent file a "petition," we reject the trial court's conclusion that the requirements of section 36-6-108 are satisfied by *oral* notification. Furthermore, finding no basis for invoking such restrictions and bearing in mind that the legislature was free to impose restrictions of its choosing, we reject the trial court's conclusion that the thirty-day period may be invoked only where non-invocation would result in harm or prejudice to the relocating parent.

Finally, we must note that our conclusions reached herein do not deprive a court from considering potentially harmful circumstances, as Father suggests. Section 36-6-108(g) expressly provides that "[n]othing in this section shall prohibit either parent from petitioning the court at any time to address issues, such as but not limited to, visitation, other than a change of custody related to the move." **Tenn. Code Ann. § 36-6-108(g)**. The requirement that a parent opposing relocation file a petition in opposition within thirty days of receipt of notice of the proposed relocation in no way ties the court's hands with respect to issues unrelated to the move.

In sum, we conclude that section 36-6-108 mandates that a parent wishing to oppose relocation file a petition in opposition within thirty days of receipt of notice of the proposed relocation. If no written petition in opposition is timely filed, the parent proposing to relocate with the child shall be permitted to do so, notwithstanding the absence of harm or prejudice to the relocating parent due to the untimely petition.[9] Because Father failed to file a written

---

[9]Father briefly argues in his appellate brief that automatically allowing relocation when no timely petition in opposition is filed deprives him of his right to due process. He mistakenly contends that allowing relocation when no petition in opposition is filed automatically results in a change of custody to the relocating parent and/or decreased parenting time with the non-relocating parent. As stated above, when no petition in opposition is filed, the parent is simply allowed to relocate; if a visitation schedule cannot be agreed upon, "all relevant factors" are then considered in fashioning a visitation schedule. In any event, we find that Father has waived consideration of the due process issue by failing to include such in his statement

(continued...)

-11-

petition in opposition to Mother's proposed relocation within thirty days of receipt of her certified letter, we find the trial court erred in conducting any further analysis pursuant to section 36-6-108. The decision of the trial court is reversed, and Mother is permitted to relocate to Omaha, Nebraska, with the minor child. Father's request for appellate attorney fees is denied, and all remaining issues are deemed pretermitted.

## V. CONCLUSION

For the aforementioned reasons, we reverse the decision of the circuit court, and we permit Mother to relocate to Omaha, Nebraska, with the minor child. Father's request for appellate attorney fees is denied, and all remaining issues are deemed pretermitted. Costs of this appeal are taxed to Appellee, Thomas Goodman Rutherford, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[9](...continued)
of the issues. **Tenn. R. App. P. 13(b)** ("Review generally will extend only to those issues presented for review.").

-12-