# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
September 6, 2016 Session

## NOVE KEPHART, SR. v. DANIELA F. SCHWARZER KEPHART

**Appeal from the Chancery Court for Coffee County**
**No. 2011-CV-249      L. Craig Johnson, Chancellor**

_____

**No. M2015-02285-COA-R3-CV – Filed October 26, 2016**

_____

The father of two children opposes the relocation of the children with their mother from middle Tennessee to Harrison, Arkansas. He also contends he is entitled to a child support deviation. At trial, testimony revealed that the mother wants to relocate because her husband accepted a position in Harrison that resulted in an annual salary increase of $20,000, plus a bonus. The mother also testified that she was offered a job in Harrison that pays more than her current position. The trial court granted permission to relocate, finding that the relocation had a reasonable purpose because the mother and her husband would receive a significant increase in annual income and increased opportunities for advancement in Arkansas. The trial court also found that relocating would not result in serious harm to the children and was not intended to defeat the father's visitation. In addition, the trial court denied the father's request for a child support deviation. The father appealed, contending that the court's findings about the relocation are erroneous and that he is entitled to a child support deviation. The evidence supports the trial court's findings regarding the purpose and nature of the relocation. Additionally, the father is not entitled to a child support deviation under the plain language of the regulations. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Thompson G. Kirkpatrick, Manchester, Tennessee, for the appellant, Nove Kephart, Sr.

Greg Bennett Perry, Manchester, Tennessee, for the appellee, Daniela F. Schwarzer Kephart.

# OPINION

Daniela F. Schwarzer Kephart ("Mother") and Nove Kephart, Sr. ("Father") are the parents of two minor children. The parties were divorced in 2012 and entered an agreed parenting plan that named Mother the primary residential parent. Subsequently, Mother met and married James Corty ("Husband").

In December 2013, Mother obtained a restraining order against Father. The order was in place until October 2014 when the parties went to mediation and agreed on a modified parenting plan. Under the modified plan, Mother remained the primary residential parent with 249 days of residential parenting time while Father had 116 days of residential parenting time. Additionally, the modified plan states that Father does not have a child support obligation because "[t]he children receive social security payments based upon [Father's] disability which exceed the amount due under the Tennessee Child Support Guidelines . . . ."

In April 2015, Mother notified Father that she intended to relocate to Harrison, Arkansas. In response, Father filed a petition in opposition to the relocation. Mother answered the petition, alleging that Husband had accepted a position in Harrison "resulting in a change of income from approximately $70,000 annually to a current salary of $100,000.00." Mother also alleged that she currently earned $34,000 annually and had received a job offer in Harrison with a salary of $50,000.

Trial occurred in August 2015. Mother testified that Husband had worked for Baxter Industries in Winchester, Tennessee, until January 2015 when he took a position at Pace Industries in Harrison, Arkansas. Mother testified that she lived in Manchester at a house that Husband had purchased in September 2014. Mother testified that she and Husband began discussing the possibility that Husband would take the job in Arkansas in December 2014, about four months after the house was purchased. Mother stated that Husband was renting a house in Arkansas and that the Manchester house was currently under contract to be sold. Mother also stated that she had "received a formal job offer acknowledgement letter" from Pace. Mother testified that this job had a higher salary than her current job.

In addition, Mother testified that Father was a good parent and that he had exercised all of his parenting time. Mother stated that she received "$600-something per child" in monthly payments based on Father's social security disability benefits.

Husband testified that he currently worked as a "quality manager" at Pace and had worked as a "quality engineer" in the past. His base-pay at Pace was $90,000, and he had the ability to earn about $9,000 as bonus pay. His base-pay at his previous job had been $70,000. Husband also testified that Pace was a growing company that made a broad

range of products. Husband stated that he had the potential for career advancement at Pace.

The parties stipulated that there were quality engineer jobs available in middle Tennessee but did not stipulate that those jobs would provide a similar income or that Husband would be a viable candidate for them. Husband stated that he had not looked for any other jobs in middle Tennessee before he took the job in Arkansas. However, Husband also testified that he had not been actively looking for out-of-state jobs either. Instead, Pace contacted him because they "had [his] resume on file from three years ago."

Husband testified that the house he purchased in Manchester was only two blocks away from where Father lived. He stated that Father occasionally came over to the house and took care of Husband's dog in Husband's absence. Husband also stated that he had discussed the possibility of moving to Harrison with Father and had offered to pay for Father to move to Harrison "if he would consider it."

Father testified that he was actively involved in the lives of his children and had not failed to exercise any parenting time. He stated that he did not consider Husband's offer to move him to Harrison because his son from a previous marriage was graduating from high school and he was busy with other family matters. Father's only income was $1,200 per month in social security. He stated that he did not have a lot of money and could not afford to "meet [Mother] halfway" if she relocated to Arkansas.

Trish Miller, a licensed professional counselor who interviewed and performed assessments on the children, opined that relocation would cause the children emotional harm. She stated that it "could be" traumatic for the children to move to Arkansas with Mother. However, she also testified that it "could be" traumatic for the children if they remained with Father and Mother moved to Arkansas. According to Ms. Miller, allocating parenting time so that the children could spend time with both parents would reduce the trauma of relocation.

Ms. Miller further opined that there was "a high percentage" that both children had been exposed to some kind of "sexual behaviors that are not normal for their age group." Ms. Miller stated that this exposure was not necessarily the result of criminal conduct and could not say how the exposure occurred. According to her testimony, the exposure could just as easily have happened in Mother's or Father's home.

The trial court granted Mother permission to relocate, finding that the request to relocate had a reasonable purpose because Mother and Husband "will receive a significant increase in annual income" as well as "increased opportunities for advancement and future income" in Harrison, Arkansas. The trial court also found that the relocation was not vindictive and would not "have a detrimental effect on the children that arises to the level of severe harm to the children."

Father filed a motion to alter or amend that included a request for a deviation from the child support guidelines. According to Father's motion, each child received $680 per month (i.e., $1,360 in total) based on Father's social security disability benefit. Because his child support obligation was only $345 per month under the child support guidelines, Father requested that he receive $1,015 per month, the difference between his child support obligation and the total amount of social security disability the children received on his account. The trial court denied the request. Father appealed.

## STANDARD OF REVIEW

The standard of review of a trial court's findings of fact is de novo with a presumption that those findings are correct unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Rawlings v. John Hancock Mut. Life Ins. Co.,* 78 S.W.3d 291, 296 (Tenn. Ct. App. 2001). The evidence preponderates against a trial court's finding of fact when it supports another finding of fact with greater convincing effect. *See Walker v. Sidney Gilreath & Assocs.,* 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. RR Westminster Holding, Inc.,* 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999).

The presumption of correctness applies only to the trial court's findings of fact, not to its conclusions of law. *See Hardcastle v. Harris*, 170 S.W.3d 67, 79 (Tenn. Ct. App. 2004). Accordingly, we review the trial court's resolution of legal issues de novo without a presumption of correctness. *See id.*

## ANALYSIS

Father argues that the trial court erred by allowing Mother to relocate with the children. Father also argues that the trial court erred by failing to grant him a deviation from the child support guidelines.

### I. RELOCATION

Tennessee's parental relocation statute contains two different standards for determining whether a parent should be allowed to relocate. *See* Tenn. Code Ann. § 36-6-108(c)-(d). The appropriate standard depends upon whether the parents are actually spending substantially equal intervals of time with the child. *See id.*; *Rutherford v. Rutherford*, 416 S.W.3d 845, 848-49 (Tenn. Ct. App. 2013) (quoting *Lima v. Lima*, No. W2010-02027-COA-R3-CV, 2011 WL 3445961, at *3 (Tenn. Ct. App. Aug. 9, 2011)).

Here, it is undisputed that Mother, the parent desiring to relocate, is actually spending a substantially greater amount of time with the children than Father. In such situations, a presumption in favor of allowing the relocation exists. *See* Tenn. Code Ann.

§ 36-6-108(d)(1); *Collins v. Coode*, No. M2002-02557-COA-R3-CV, 2004 WL 904097, at \*2 (Tenn. Ct. App. Apr. 27, 2004) ("Tenn. Code Ann. § 36-6-108 embodies a legislatively mandated presumption in favor of a relocating custodial parent who spends substantially more time with the child than the non-custodial parent."). In order to rebut this presumption, Father must carry the burden of proving that (1) the relocation does not have a reasonable purpose; (2) the relocation would pose a threat of specific and serious harm to the child that outweighs the threat of harm to the child from a change in custody; or (3) the parent's motive for relocating with the child is vindictive "in that it is intended to defeat or deter visitation rights of the non-custodial parent . . . ." Tenn. Code Ann. § 36-6-108(d)(1)(A)-(C).

The trial court found that Father had not proved any of the grounds listed in Tenn. Code Ann. § 36-6-108(d)(1). Father contends that the evidence preponderates against the trial court's findings and that all three grounds are present in this case.

A. Reasonable Purpose

Father contends that the relocation lacked a reasonable purpose because it was based on purely financial considerations.

There are no bright-line rules about what constitutes a reasonable purpose for a proposed relocation. *Redmon v. Redmon*, No. W2013-01017-COA-R3-CV, 2014 WL 1694708, at \*5 (Tenn. Ct. App. Apr. 29, 2014). Instead, such determinations "are fact-intensive and require a thorough examination of the unique circumstances of each case." *Id.* (quoting *Lima*, 2011 WL 3445961, at \*7) (internal quotation marks omitted). In determining whether a reasonable purpose exists, courts must consider both economic and non-economic factors. *Id.* Ultimately, the reasonable purpose "must be a significant purpose, substantial when weighed against the gravity of the loss of the noncustodial parent's ability to fully participate in their children's lives in a more meaningful way." *Carman v. Carman*, No. M2011-01265-COA-R3-CV, 2012 WL 1048600, at \*4 (Tenn. Ct. App. Mar. 26, 2012) (quoting *Webster v. Webster*, No. W2005-01288-COA-R3-CV, 2006 WL 3008019, at \*14 (Tenn. Ct. App. Oct. 24, 2006)) (internal quotation marks omitted).

"Doubtless, relocation because of a better job opportunity, greater salary, and career advancement opportunities, establishes a 'reasonable purpose' within the meaning of the statute." *Redmon*, 2014 WL 1694708, at \*5 (quoting *Rudd v. Gonzales*, No. M2012-02714-COA-R3-CV, 2014 WL 872816, at \*11 (Tenn. Ct. App. Feb. 28, 2014)). When a parent relocates based on better job prospects, it may be relevant to compare the parent's job offer in the new location with his or her job opportunities in the current location. *See id.* at \*7. Relevant factors include "the relative significance of the increase, the cost of living in the proposed location compared to the present location, . . .

opportunity for career advancement and economic betterment of the family unit." *See id.* (alteration in original).

As the party opposing relocation, Father had the burden of producing evidence from which this comparison could be made. *See id.* The parties stipulated that there were quality engineer jobs available in middle Tennessee but there was no evidence about the salary of those jobs or whether Husband would be a viable candidate for them. Although there was some evidence about the cost that Husband and Mother were paying for housing in both middle Tennessee and Harrison, Arkansas, there was little additional evidence about the general cost of living in both locations. Instead, the evidence demonstrated that Husband received a significant salary increase at a stable, growing company and that there would be opportunities for career advancement in Harrison. Similarly, Mother testified that the job she was offered in Harrison paid more than the job she currently had.

Based on the foregoing, the trial court did not err when it found that the proposed relocation had a reasonable purpose.

### B. Threat of Specific and Serious Harm

Father contends that Mother's proposed relocation poses a threat of specific and serious harm based on the testimony of Ms. Miller, the therapist. The entirety of Father's argument on this point reads as follows:

> The Therapist testified that the proposed relocation would have a detrimental affect [sic] on the minor child. The Therapist further found that the children had been exposed to inappropriate sexual behavior, and there had been allegations previously lodged regarding inappropriate sexual behavior against [Mother and Husband].

In order to establish this ground, the threat of harm must be "specific and serious" and must outweigh "the threat of harm to the child of a change of custody . . . ." *See* Tenn. Code Ann. § 36-6-108(d)(1)(B). Subjecting the children to inappropriate sexual behavior would likely qualify as "specific and serious harm." *See, e.g.*, Tenn. Code Ann. § 36-6-108(d)(2)(C) (stating that specific and serious harm includes situations in which a parent wishes to relocate and take up residence with a person who has a history of child or domestic abuse). Additionally, specific and serious harm exists when a child relies on the non-relocating parent "who provides emotional support, nurturing and development such that removal would result in severe emotional detriment to the child." *See* Tenn. Code Ann. § 36-6-108(d)(2)(D).

Ms. Miller's testimony does not support the finding that relocating to Harrison, Arkansas, will cause either of these results. Although Ms. Miller testified that the

children had been exposed to inappropriate sexual behavior, she was unable to testify about how this exposure occurred. Indeed, she could not testify about whether the exposure occurred in Father's or Mother's home. Without any evidence about the source of the exposure to inappropriate behavior, there is no factual basis for finding that relocating with Mother would subject the children to any inappropriate sexual behavior.

Similarly, although there is evidence that the children are attached to Father and that he provides them with emotional support, there is no evidence that they rely on him so heavily that relocation would cause them "severe emotional detriment." *See Mann v. Mann*, 299 S.W.3d 69, 76 (Tenn. Ct. App. 2009). Ms. Miller's testimony that relocation would cause "emotional harm" does not amount to evidence that "removal would result in *severe emotional detriment* to the child." *See* Tenn. Code Ann. § 36-6-108(d)(2)(D) (emphasis added). Indeed, Ms. Miller testified that it "could be" traumatic for the children whether they moved to Arkansas with Mother or remained with Father in Tennessee. This testimony does not establish that any threat of harm from relocating "outweighs the threat of harm to the child of a change of custody . . . ." *See* Tenn. Code Ann. § 36-6-108(d)(1)(B).

As a result, the evidence does not preponderate against the trial court's finding that relocation will not subject the children to specific and serious harm.

### C. Motive for Relocating

Father contends that Mother's motive for relocating was vindictive. A parent's motive for relocation "is 'vindictive' within the meaning of the statute when 'it is intended to defeat or deter visitation rights of the non-custodial parent or the parent spending less time with the child.'" *Sanko v. Sanko*, No. E2014-01816-COA-R3-CV, 2015 WL 4199204, at *9 (Tenn. Ct. App. June 16, 2015) (quoting Tenn. Code Ann. § 36-6-108(d)(1)(C)), *perm. app. denied* (Tenn. Nov. 24, 2015). We cannot broaden this definition. *See id.*

As support for his argument, Father relies on the timing of the decision to relocate. Father notes that the parties were involved in ten months of "very contentious litigation" that culminated with the October 2014 modified parenting plan. Father also notes that Husband accepted the job in Arkansas only two months after the October 2014 plan was entered.

Without more, the timing of Husband's decision does not cause the evidence to preponderate against the trial court's finding about Mother's motive for the proposed relocation. Indeed, the evidence at trial demonstrated that Husband purchased a house in Manchester, Tennessee, in September 2014, only four months before Mother and Husband began discussing relocation to Arkansas. If Husband and Mother intended to relocate in order to prevent Father from visiting his children, it seems unlikely that

Husband would purchase a house only two blocks away from where Father lived. Moreover, Husband testified that he was willing to help Father maintain contact with the children and that he had offered to pay for Father to move to Harrison. Father confirmed that Husband and Mother had offered to help him move but stated that he did not consider accepting this offer.

Therefore, the evidence supports the trial court's finding that Mother's motive for relocating was not vindictive.

## II. CHILD SUPPORT DEVIATION

Father contends that he is entitled to a child support deviation because the amount of federal disability benefits the children receive due to his disability is greater than the amount of child support he is required to pay under the child support guidelines.

As previously stated, Father's child support obligation is $345 per month, and the children receive $1,360 per month in total based on Father's social security disability benefit. According to the child support guidelines, if the amount of child support due is less than the amount of social security benefits the child receives on the obligor's account then "the child support obligation of that parent is met and *no additional child support amount must be paid by that parent.*" *See* Tenn. Comp. R. & Reg. 1240-2-4-.04(3)(a)(5)(iii)(I) (emphasis added). This subsection clearly states that Father is not required to pay any additional child support. It does not require or suggest that Father might be entitled to retain the difference between his child support obligation and the amount of social security benefits his children receive.

Moreover, all deviations from the child support guidelines must serve the best interest of the children who are receiving support. *See* Tenn. Comp. R. & Reg. 1240-2-4-.07(1)(b), (c)(3). It is difficult to see how the best interests of the children would be served by reducing the amount of money they receive, and Father's brief does not make any argument about how his proposed deviation might do so. Consequently, the trial court did not err by denying Father's request for a deviation from the child support guidelines.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Nove Kephart, Sr.

_____
FRANK G. CLEMENT, JR., P.J., M.S.

- 8 -