IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
September 11, 2024 Session

## RACHEL POYNER HIGHT v. BILLY HUGH HIGHT

**Appeal from the Chancery Court for Madison County**
**No. 79084     Steven W. Maroney, Chancellor**

_____

**No. W2024-00017-COA-R3-CV**

_____

Mother appeals the trial court's ruling approving her request to relocate with the parties' older daughter but denying her request with regard to the parties' younger son. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and CARMA DENNIS MCGEE, JJ., joined.

Mary Jo Middlebrooks, Jackson, Tennessee, for the appellant, Rachel Poyner Hight.

Lisa A. Houston, Jackson, Tennessee, for the appellee, Billy Hugh Hight.

## MEMORANDUM OPINION[1]

### I. FACTUAL AND PROCEDURAL HISTORY

---

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

The parties, Rachel Poyner Hight ("Mother") and Billy Hugh Hight ("Father") were divorced in July 2021 by the Madison County Chancery Court ("the trial court"). The agreed permanent parenting plan in place designated Mother as the primary residential parent and gave Father 165 days of parenting time with the parties' two children, "Daughter," born in 2008, and "Son," born in 2012.

In May 2022, Mother filed a motion to relocate with the children from Jackson, Tennessee, to Huntsville, Alabama, citing financial problems in Jackson, as well as issues with her employment as an anesthesiologist. Mother further alleged that a move would be in the children's best interests.

Father filed a petition in opposition to the relocation on May 31, 2022. Therein, Father alleged that Mother's move was motivated by a desire to live with her boyfriend and that he actually served as the primary caregiver for the children in many respects. As such, he asserted that a relocation would not be in the children's best interests.[2] Father therefore asked that in the event of Mother's move, he be named primary residential parent of the children.

A hearing on the relocation and other issues occurred on September 20, 2023. By the time of the final hearing, Mother had altered her intent to relocate to Memphis, Tennessee, rather than Huntsville. After hearing from Daughter in camera, Jody Pickens, the District Attorney General for the 26th Judicial District and a friend of the parties,[3] spoke about his positive view of the parents in this case, as well as his concern about the crime problems in Memphis.

Mother testified that her desire to relocate to Memphis was mostly work-related, as changes to her prior employment as an anesthesiologist in Jackson caused her to be over-worked and concerned about both the standard of care that she could provide and her ability to spend time with the children. So Mother left her employment in Jackson in June 2022. She attempted to work with a traveling dental anesthesia group beginning in October 2022, but issues with that company prevented her from working. Mother then widened her search to include Memphis. Eventually, in May 2023, Mother accepted employment in Memphis but was commuting approximately three hours daily while still living in Jackson, which she said took time away from being with the children. But Mother testified that unlike her prior employment, she has every weekend off.

Mother further testified that she was the parent who historically took care of the children's evening routines, while Father took care of the children in the morning. This continued post-divorce, with Mother dropping the children off to Father's home before

---

[2] Father also asked that Mother be held in contempt for failure to pay three months of child support. That request is not at issue in this appeal. In the course of the present litigation, the parties also raised other various issues, which again, are not at issue in this appeal.

[3] General Pickens' son is good friends with Son and plays school sports with him.

school in the morning, until Mother quit her job in Jackson. But Mother testified that she was the parent who always took the children to doctor's appointments. Mother explained that she had tentatively picked out a school for the children in Memphis, but that she would want Father's input into any school choice. Still, this school had an excellent theater and choral program for Daughter, as well as a phenomenal sports program for Son. Mother testified that she would hire a driver to take the children to school.

Mother admitted that Daughter has been treated for an anxiety disorder, as Daughter was "miserable and having a hard time functioning at school and essentially isolating herself from other students at school because the social anxiety was so overwhelming that she was struggling." Mother testified that some of the panic attacks were the result of bullying episodes at school. According to Mother, Daughter and Son have a typical sibling relationship, where they bicker sometimes but generally get along with each other.

Father testified that he is employed as a teacher as University School of Jackson ("USJ"), where the children have attended school. Due to his job, Father was historically able to attend all of the children's activities, and even quit one coaching job in part because it interfered with attending the children's activities. Father was also the parent to attend to the children if they became sick while at school, as well as the parent who took off work for their sick days when another family member was unavailable.

Father testified that he is very close to Son because he coached several of his sports teams over the years. Son has excelled at sports, particularly baseball, where he has been moved up to an older team. So Father testified that it would be very detrimental to limit his contact with Son through a relocation, as his and Son's lives and interests "are very tightly intertwined."

Father also testified that he sees Daughter three to four times a week for breakfast at school, and that he will be able to see Son more when he ages up to "upper school." Father testified that it was important for the children to remain in Jackson and at USJ because "this is where [the children are] planted." For Son in particular, a move would take him away from his close group of friends. Father explained that if Mother does not relocate and is required to commute, he could care for the children each school night from the time school ends until Mother could pick them up; Mother was not currently allowing Father to do this, citing her unpredictable work schedule.

The trial court issued an oral ruling at the close of proof, which was incorporated into the trial court's December 27, 2023 written order.[4] After making detailed findings

---

[4] Some of the oral ruling that was incorporated into the written order includes colloquy between the trial court and the attorneys representing the parties. This may not be the best practice. *See **Smith v. All Nations Church of God***, No. W2021-00846-COA-R3-CV, 2022 WL 4492199, at *3 (Tenn. Ct. App. Sept. 28, 2022) ("[I]t should not fall to this Court to parse out a trial court's ruling from its colloquy.").

regarding the factors contained in Tennessee Code Annotated section 36-6-108, the trial court found many of the factors to be either equal or inapplicable, but noted that Daughter was older and suffering from bullying at her current school, while Son was younger and had closer relationships with friends at his current school and with Father. Thus, the trial court found it to be in Daughter's best interest to relocate but not in Son's best interest. So the trial court granted Mother's request to relocate with Daughter but denied her request to relocate with Son and, after considering the general best interest factors under Tennessee Code Annotated section 36-6-106, fashioned a new permanent parenting plan naming Father the primary residential parent of Son in the event that Mother nevertheless chose to relocate.[5] The trial court also awarded Father $6,389.00 in attorney's fees—half of his requested amount for prevailing in part. Mother thereafter appealed to this Court.

## II. Issues Presented

Mother raises the following issues, which are taken from her appellate brief and slightly restated:

1. Whether the trial court erred in separating siblings in this cause of action.

2. Whether the trial court erred in awarding a modification of custody.

3. Whether the trial court erred by awarding a modification of custody which was not requested by either party.

4. Whether the trial court erred in awarding Father attorney's fees and costs.

5. Whether this honorable court should award Mother attorney's fees and costs incurred for this appeal.

In the posture of appellee, Father also seeks an award of attorney's fees incurred on appeal.

## III. Standard of Review

Findings of fact by a trial court following a bench trial are reviewed "de novo upon the record of the trial court, accompanied by a presumption of correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). We review the legal conclusions of the trial court de novo with no such presumption of correctness. *Chaffin v. Ellis*, 211 S.W.3d 264, 285 (Tenn. Ct. App. 2006).

---

[5] The July 2021 agreed parenting plan would remain in effect in the event that Mother does not relocate.

- 4 -

As this court has recently explained with regard to cases involving child custody and visitation in particular:

> Trial courts are afforded "broad discretion to fashion custody and visitation arrangements that best suit the unique circumstances of each case, and the appellate courts are reluctant to second-guess a trial court's determination regarding custody and visitation." [*Grissom v. Grissom*, 586 S.W.3d 387, 393 (Tenn. Ct. App. 2019)] (quoting *Reeder v. Reeder*, 375 S.W.3d 268, 278 (Tenn. Ct. App. 2012)). The determination by the court of custody and visitation "will not ordinarily be reversed absent some abuse of that discretion." *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988). "Under the abuse of discretion standard, a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting *State v. Scott*, 33 S.W.3d 746, 752 (Tenn. 2000); *State v. Gilliland*, 22 S.W.3d 266, 273 (Tenn. 2000)). "A trial court abuses its discretion only when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999). The abuse of discretion standard does not allow an appellate court to substitute its judgment for that of the trial court. *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998). Appellate courts should not overturn a trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge*, 42 S.W.3d at 85.

*Ramsey v. Ramsey*, No. E2022-01295-COA-R3-CV, 2024 WL 470421, at *5 (Tenn. Ct. App. Feb. 7, 2024).

## IV. ANALYSIS

Before addressing the issues presented in this appeal, we feel it necessary to discuss what has not been appealed by the parties. From our review of the parties' briefs, neither party challenges the trial court's decision to allow Mother to relocate to Memphis with Daughter. In addition, nothing in the issues designated by Mother actually indicates that she is appealing the trial court's decision to deny her request to relocate with Son. *See* Tenn. R. App. P. 13(b) ("Review generally will extend only to those issues presented for review."); *see also* *Trezevant v. Trezevant*, 696 S.W.3d 527, 530 (Tenn. 2024) (per curiam) (noting that issues may be waived when they are not designated as issues). Rather, her issues only appear to deal with the resulting parenting plan entered by the trial court. Indeed, in her brief, Mother does not specifically reference a single one of the best interest factors contained in the relocation statute, Tennessee Code Annotated section 36-6-108(c)(2), or the trial court's findings thereunder.[6] Mother's choices have made it

---

[6] Mother also does not specifically address any of the general best interest factors under Tennessee

somewhat difficult to address her arguments, as she does not appear to contest the rulings that underpin the trial court's decision, but only the ultimate decision itself. Nevertheless, we will attempt to address the arguments that Mother has clearly presented and argued in this appeal. *See* **Trezevant**, 696 S.W.3d at 531 (directing this Court to "address a clearly presented argument that falls within the scope of the stated issues").

**A.**

We begin with an argument that is threaded throughout much of Mother's brief: that the trial court should not have changed custody of Son because Mother's proposed relocation was not a material change in circumstances and a change in custody was not properly pleaded. Respectfully, it appears that Mother misunderstands the law applicable in this situation.

In Tennessee, relocation by a parent who is spending intervals of time with a child is governed by Tennessee Code Annotated section 36-8-106. Once the proper procedure has been followed to place the issue before the court, "the court shall determine whether relocation is in the best interest of the minor child" based on certain non-exclusive factors. Tenn. Code Ann. § 36-6-108(c)(1).[7] Depending on whether the trial court finds that relocation is in the child's best interest, the trial court then must take one of two avenues. "If, upon consideration of factors in subdivision (c)(2), the court finds that relocation is in the best interest of the minor child, the court shall modify the permanent parenting plan as needed to account for the distance between the nonrelocating parent and the relocating parent." Tenn. Code Ann. § 36-6-108(3). In other words, if the request to relocate is granted, the trial court does not change custody but merely implements a new parenting plan as needed to account for any travel issues. However,

> If the court finds that relocation is not in the best interest of the minor child, the court shall deny the petition for approval and, utilizing the factors provided in § 36-6-106(a), enter a modified permanent parenting plan that shall become effective only if the parent proposing to relocate elects to do so despite the court's decision denying the parent's petition for approval.

Tenn. Code Ann. § 36-6-108(4). Thus, if the trial court finds that relocation is not in the child's best interest, the trial court is required to fashion a new parenting plan that goes into effect only in the event that the parent nevertheless relocates.

The trial court did exactly as the statute requires. In particular, because the trial court ruled that it was not in Son's best interest to relocate to Memphis, the trial court fashioned what it characterized as a "contingent plan" that would change custody of Son to Father in

---

Code Annotated section 36-1-106(a), which are among the factors the trial court may consider under section 36-6-108(c)(2).

[7] Our references to section 36-6-108 are to the version in effect at the time Mother filed her motion to relocate, unless otherwise specified.

the event of a relocation by Mother. It is true that a relocation alone is not a material change in circumstances when the court has ruled that it is in the children's best interests to relocate. *See generally* **Sanko v. Sanko**, No. E2022-00742-COA-R3-CV, 2023 WL 2808312 (Tenn. Ct. App. Apr. 6, 2023) (holding that the trial court could not change custody based on a relocation, as the court had already ruled that relocation was in the child's best interest). But the relocation statute required that the trial court enter a new parenting plan consistent with Son's best interest after it determined that relocation was not best for him. And indeed, Father specifically asked to be named the children's primary residential parent in the event of Mother's relocation, both in his pleadings and at trial. There is no error in the trial court's decision to fashion a parenting plan that results in a change in custody when it found that relocation was not in Son's best interest.

**B.**

Mother next asserts that the trial court erred in separating Son and Daughter. As an initial matter, she assigns error to the trial court's decision to separate the children because neither party asked for that relief in their pleadings. We agree that both parties asserted in their pleadings that they should be named the primary residential parent of both children. We do not agree, however, that the trial court was bound by these requests.

Under the relocation statue, the trial court was tasked with determining whether relocation was in the children's best interests and if not, what parenting plan was in the children's best interests. "Tennessee statutes, taken together, impose a duty on trial courts to protect the best interests of children," even when the parents agree otherwise. **McCall v. McCall**, No. W2012-00692-COA-R3-CV, 2012 WL 2513938, at *3 (Tenn. Ct. App. June 29, 2012) (quoting **Tuetken v. Tuetken**, 320 S.W.3d 262, 271 (Tenn. 2010)); *see also* Tenn. Code Ann. § 36-1-101(a)(2)(A)(i) ("[T]he court shall have the widest discretion to order a custody arrangement that is in the best interest of the child."); **Grissom**, 586 S.W.3d at 391 ("[T]he welfare and best interests of the child are the paramount concern in custody, visitation, and residential placement determinations, and the goal of any such decision is to place the child in an environment that will best serve his or her needs." (quoting **Burden v. Burden**, 250 S.W.3d 899, 908 (Tenn. Ct. App. 2007))). The trial court here was therefore obligated to craft a parenting plan that was in the best interests of each child, even if neither party originally contemplated that the children's best interests would diverge.

Mother next asserts that the trial court erred when it separated Son and Daughter; instead, she should have remained primary residential parent of both children. As Mother acknowledges, Tennessee caselaw generally provides that the separation of siblings is disfavored and there is a "presumption against separation[.]" **Shofner v. Shofner**, 181 S.W.3d 703, 771 (Tenn. Ct. App. 2004) (citations omitted). However, this presumption "must give way to other considerations in appropriate circumstances." *Id.* (citing **Rice v. Rice**, 983 S.W.2d 680, 684 (Tenn. Ct. App. 1998)). As this Court recently explained,

Generally speaking, Tennessee courts have held that it is not appropriate to separate siblings by a custody order. ***Baggett v. Baggett***, 512 S.W.2d 292, 293–94 (Tenn. Ct. App. 1973); ***Richardson v. Richardson***, No. W2000-02374-COA-R3-CV, 2001 WL 687074, at *5 (Tenn. Ct. App. June 14, 2001) (citing ***In re S.B.***, No. M1999-00140-COA-R3-CV, 2000 WL 575934, at *5 (Tenn. Ct. App. May 12, 2000)). However, while there is a presumption against separating siblings, this principle must give way to other considerations if the best interest of a child so dictates. ***Id.***; ***Strickland v. Strickland***, No. M2012-00603-COA-R3-CV, 2012 WL 6697296, at *14 (Tenn. Ct. App. Dec. 21, 2012) ("As this court has recognized on several occasions, a parenting schedule that separates siblings is discouraged; however, the best interests of the child should be the foremost consideration."). Indeed, it is well established that the preference for siblings to remain together is not a controlling factor. ***In re S.B.***, No. M1999-00140-COA-R3-CV, 2000 WL 575934, at *5 (Tenn. Ct. App. May 12, 2000). Rather, sibling relationships are "simply a factor for the court to consider in determining the best interest of the child." ***Id.***; *see **In the Matter of M.W.A.***, 980 S.W.2d 620, 623 (Tenn. Ct. App. 1998) (keeping siblings together was only one of the three factors the court used in determining the children's best interest).

***Bumbalough v. Hall***, No. M2022-0010030-COA-R3-CV, 2023 WL 4401137, at *8 (Tenn. Ct. App. July 7, 2023). In the event that the children's best interests favor separation, courts must make efforts to "minimize the potentially harmful effects of this separation by including liberal visitation rights and other provisions enabling the siblings to continue their relationship with each other." ***Shofner***, 118 S.W.3d at 718.

After reciting a multitude of cases which have involved sibling separation, Mother cites a number of facts that she contends demonstrate that her "reasons for relocation . . . are reasonable and substantial" and that relocation is in the best interests of the children. As to Mother's first contention, it appears that she may be relying on outdated law. Prior to 2018, the Tennessee relocation statute indeed provided that when a parent spending more time with a child sought to relocate, the parent would be permitted to relocate unless the court found that the relocation did not have a reasonable purpose, the relocation posed a threat of substantial harm, or the move was vindictive. Tenn. Code Ann. § 36-6-108(d)(1)(A) (2017). Only if the trial court found one of these specified grounds was the court to consider the best interest of the child. Tenn. Code Ann. § 36-6-108(e) (2017). In 2018, however, the statute was amended to its current form, in which the court determines a request to relocate solely based on the child's best interests. *See* 2018 Tenn. Laws Pub. Ch. 853 (H.B. 1666), *eff.* July 1, 2018. Under the current law, the reason for the relocation is only one among many factors that the trial court is to consider in determining the child's

best interests. *See* Tenn. Code Ann. § 36-6-108(c)(2).[8] And as previously discussed, Mother has not specifically referenced any of the best interest factors contained in section 36-6-108(c)(2).

After our review of the trial court's findings on those factors, we cannot conclude that the trial court abused its discretion. Certainly, "[c]ourts must strive to devise parenting plans that promote the development of the children's relationship with both parents and interfere as little as possible with post-divorce family decision-making." *Shofner*, 181 S.W.3d at 715–16 (citing *Aaby v. Strange*, 924 S.W.2d 623, 629 (Tenn. 1996)). But in determining the best interest of a child, "[t]he needs of the child[] are paramount; the desires of the parents are secondary." *Id.* (citing *Lentz v. Lentz*, 717 S.W.2d 876, 877 (Tenn. 1986)). Moreover,

> Custody and visitation determinations often hinge on subtle factors, including the parents' demeanor and credibility during the divorce proceedings themselves. Accordingly, appellate courts are reluctant to second-guess a trial court's decisions. Trial courts must be able to exercise broad discretion in these matters, but they must still base their decisions on the proof and upon the appropriate application of the applicable principles of law.

*Gaskill v. Gaskill*, 936 S.W.2d 626 (Tenn. Ct. App. 1996).

---

[8] These factors are as follows:

(A) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the nonrelocating parent, siblings, and other significant persons in the child's life;
(B) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child;
(C) The feasibility of preserving the relationship between the nonrelocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties;
(D) The child's preference, if the child is twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;
(E) Whether there is an established pattern of conduct of the relocating parent, either to promote or thwart the relationship of the child and the nonrelocating parent;
(F) Whether the relocation of the child will enhance the general quality of life for both the relocating parent and the child, including, but not limited to, financial or emotional benefit or educational opportunity;
(G) The reasons of each parent for seeking or opposing the relocation; and
(H) Any other factor affecting the best interest of the child, including those enumerated in § 36-6-106(a).

It appears that trial court did find that Mother had a valid reason for wanting to relocate to Memphis, as her new employment would give her better control over her case load and more time with her children. But a finding that Mother had a valid reason to move simply does not end our inquiry. Indeed, the trial court further found that Father's concerns about the relocation were valid: due to Father's employment as a teacher at the children's school, he "has been enjoying certainly an above average interaction with his children compared to what we commonly see in visitation plans." *See* Tenn. Code Ann. § 36-6-108(c)(2)(G). Thus, while Mother was the primary residential parent, the trial court found that Father's current ability to be a significant part of the children's lives would be negatively impacted by a relocation.[9]

The trial court also found that both proposed schools for the children were excellent, and that there could be some increased opportunities at the proposed school in Memphis. *See* Tenn. Code Ann. § 36-6-108(c)(2)(B) & (F). But the trial court found that the "enhanced benefit" to Son of the new school would be minimal because he is thriving in his current placement. The trial court further found that the family relationships could be preserved here even if relocation was granted as to one child and entered a parenting plan taking preservation of the family into account. *See* Tenn. Code Ann. § 36-6-108(c)(2)(C). The trial court found no pattern by either parent to thwart or interfere with the other parent's relationship with the children. *See* Tenn. Code Ann. § 36-6-108(c)(2)(E). Daughter expressed a somewhat muted preference to move with Mother. Son, who is younger, was not called upon to express a preference. *See* Tenn. Code Ann. § 36-6-108(c)(2)(D).

Still, the trial court found that removing Son from his long-term stable environment "in which he is familiar and comfortable could potentially be more traumatic than" for Daughter. The trial court also noted that Son's interests align more with Father's, that Son enjoys a "close relationship" with Father, that he has a close friend group that he has been integrated with since pre-kindergarten, and that Son has strong ties to his environment, school, and activities. *See* Tenn. Code Ann. § 36-6-108(c)(2)(A) & (B). In contrast, the trial court found that Daughter "has had some anxiety issues, dealt with some bullying at school, and might benefit from a fresh start in her friend arrangement" and school.

In sum, the trial court found that many factors were essentially "a wash" between the parties, making this a "hard" decision. But based on the different needs of the individual children, the trial court concluded that Son would not benefit from a relocation to Memphis, while Daughter would. And in the parenting plan to be entered in the event of Mother's relocation, the trial court specifically fashioned each parent's parenting time on both a day-to-day basis and holidays and vacations "such that the children will be together during each visit."

---

[9] Under the agreed parenting plan, Father was allowed approximately 45% of the days with the children. And Father testified that he agreed to this allocation because his job allowed him to spend time with the children at school.

Certainly, separation of Son and Daughter is not the most ideal outcome. The reality of this case means that the most desired outcome—both parents and the children remaining in Jackson with Mother obtaining gainful and meaningful employment there—may not be a possibility. But the trial court was not faced with determining the most desired outcome, but with determining whether either of the children should be permitted to relocate with Mother to Memphis. And because "the two minor children involved have very different characters and vastly different needs," **Richardson**, 2001 WL 687074, at *5, the trial court concluded that Daughter's best interests were furthered by a relocation, while Son's were not.

In our view, the record supports the trial court's findings that while Mother was technically the primary residential parent of the children, Son was particularly close with Father and enmeshed in his community in Jackson. Moreover, the evidence indicates that Daughter and Son enjoy a typical sibling-relationship, and there was nothing to suggest that this relationship could not be preserved by the trial court's parenting plan. In determining that Son's best interests therefore favored remaining in Jackson with Father, while Daughter was permitted to relocate with Mother, the trial court did not apply an incorrect standard or reach a decision against logic or reasoning. As such, we do not second-guess the trial court's decision to fashion a parenting plan in the event of Mother's relocation to Memphis that names her primary residential parent of Daughter, while naming Father primary residential parent of Son.

## C.

Mother next asserts that the trial court erred in awarding Father attorney's fees, arguing only that "Father did not prevail." Here, the trial court ruled that Father would be awarded half of his requested attorney's fees, explaining that

> the Court feels that husband is the prevailing party, but the Court feels that the split decision it is making is such that the Court will agree to award attorney's fees to father as the technically prevailing party in the amount of $6,389, which is one-half of what was requested by . . . [his] attorney.

The relocation statute contemplates the award of reasonable attorney's fees to the prevailing party in the trial court's discretion. Tenn. Code Ann. § 36-6-108(f); *see also* **Shirley**, 6 S.W.3d at 247 (explaining the abuse of discretion standard, *supra*).

As the Tennessee Supreme Court has explained, "a party need not attain complete success on the merits of the lawsuit in order to prevail. Rather, a prevailing party is one who has succeeded on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." **Fannon v. City of LaFollette**, 329 S.W.3d 418, 431 (Tenn. 2010) (internal quotation marks and citation omitted). Here, Father did not prevent the relocation of Mother to Memphis with Daughter, but he did succeed in preventing Mother from relocating with Son. Under these circumstances, we cannot conclude that the

trial court abused its discretion in awarding Father one-half of the fees he requested as the prevailing party in this case.

**D.**

Finally, each party seeks an award of their attorney's fees incurred in this appeal under section 36-6-108(f). We have previously awarded attorney's fees under this statute for fees incurred on appeal. *See **In re McKayla H.***, No. W2020-01528-COA-R3-JV, 2023 WL 2809507, at *19 (Tenn. Ct. App. Apr. 6, 2023); *cf.* ***Killingsworth v. Ted Russell Ford, Inc.***, 205 S.W.3d 406, 409 (Tenn. 2006) ("[L]egislative provisions for an award of reasonable attorney's fees need not make a specific reference to appellate work to support such an award where the legislation has broad remedial aims."). "When considering a request for attorney's fees on appeal, we . . . consider the requesting party's ability to pay such fees, the requesting party's success on appeal, whether the requesting party sought the appeal in good faith, and any other equitable factors relevant in a given case." ***Darvarmanesh v. Gharacholou***, No. M2004-00262-COA-R3-CV, 2005 WL 1684050, at *16 (Tenn. Ct. App. July 19, 2005) (citations omitted). Although we conclude that Mother sought this appeal in good faith, given the party's relative incomes and that many of Mother's arguments on appeal lacked real merit, we exercise our discretion to award Father his reasonable attorney's fees and costs incurred in this appeal. We therefore remand to the trial court for a determination of those costs and fees.

**V. CONCLUSION**

The judgment of the Madison County Chancery Court is affirmed, and this matter is remanded to the trial court for the determination of the reasonable attorney's fees and costs incurred by Appellee, Billy Hugh Hight, as well as all further proceedings as may be necessary and consistent with this Opinion. Costs of this appeal are taxed to Appellant, Rachel Poyner Hight, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE